**STATE of Maine**

v.

**Gina Maureen BUSHEY and Stephen F. Niles.**

Supreme Judicial Court of Maine.

Argued Sept. 10, 1980.

Decided March 3, 1981.

---

David M. Cox, Dist. Atty., Gary F. Thorne (orally), R. Christopher Almy, Asst. Dist. Attys., Bangor, for plaintiff.

Hall, DeSanctis & Shcultz, Richard W. Hall (orally), Bangor, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

NICHOLS, Justice.

In a joint jury-waived trial in Superior Court (Penobscot County), the Defendant, Gina Maureen Bushey, was convicted of assault, 17–A M.R.S.A. § 207(1),[1] and the Defendant, Stephen F. Niles, was convicted of obstructing government administration, 17–A M.R.S.A. § 751(1).[2] Both Defendants appeal to this Court, raising the issues of (1) whether the Defendants were unlawfully seized, thereby requiring suppression of subsequently obtained evidence; and (2) whether there is sufficient evidence to sustain their convictions.

We deny both appeals.

Shortly before 4:00 A.M. on June 19, 1979, Officer Harold Page, of the Bangor Police Department, observed a number of people drinking beer in a city park. As he entered the park several of them left, walking down Hudson Street. Officer Page asked fellow Officer Brian Cox to "check them out." Officer Cox drove his marked police cruiser down Hudson Street and there saw the Defendants standing in front of a house. Niles was holding an eight-foot section of a small picket fence (similar to the fence located in front of the house) which he dropped upon Officer Cox's arrival. As Officer Cox got out of the car, he heard Niles arguing with Bushey. Officer Cox, who was in uniform, asked Niles about the fence. Niles replied that he had found it as it was. Niles then attempted to walk away, but Officer Cox stepped in front of him, telling him to wait a minute. At that point Bushey stepped out, told Officer Cox to stop harassing them, and hit Officer Cox's chest with her fists several times, but caused no injury. Officer Cox informed Bushey that she was under arrest for assault. She refused to turn around to be handcuffed and a struggle ensued. Officer

---

1.   17- A M.R.S.A. § 207(1) (Supp.1980) provides:

A person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another.

2.   17 ·A M.R.S.A. § 751(1) (Supp.1980) provides:

A person is guilty of obstructing government administration if he uses force, violence, intimidation or engages in any criminal act with the intent to interfere with a public servant performing or purporting to perform an official function.

Cox leaned her up against his cruiser, at which point Niles grabbed Officer Cox's arm from behind and tried unsuccessfully to pull him away. By then, Officer Page and another officer had arrived; they arrested Niles.

### Seizure of the Defendants

Both Defendants argue that Officer Cox "seized" them unlawfully, and therefore all evidence obtained subsequent to that seizure, including evidence of their identities, should have been suppressed at trial.[3]

■ "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). Officer Cox, by stepping in front of Niles as Niles attempted to walk away, thus "seized' Niles thereby bringing into play the protections of the Fourth Amendment[4] against *unreasonable* seizures. Probable cause *to arrest* is not necessary to justify such an action; whether the seizure here in question was reasonable depends upon whether there were " 'specific and articulable facts, which taken together with rational inferences from those facts,' warrant an intrusion into a constitutionally protected area." *State v. Chattley*, Me., 390 A.2d 472, 475 (1978) *quoting Terry v. Ohio, supra*, 392 U.S. at 21, 88 S.Ct. at 1879.

■ At an early morning hour Officer Cox observed Niles holding an eight-foot section of fence similar to the fence surrounding the yard of the house in front of which Niles was standing. From those facts alone Officer Cox could have reasonably suspected Niles of having committed, or of intending to commit, criminal mischief (17–A M.R.S.A. § 806). Therefore, Officer Cox had the right to interrupt Niles' freedom of movement in an effort to prevent or investigate a crime. *Terry v. Ohio, supra*, 392 U.S. at 34, 88 S.Ct. at 1886. (Harlan, J., concurring).

### Sufficiency of the Evidence

We first consider Niles' contentions.

One element of the offense of obstructing government administration is that the defendant act with *the intent* to interfere with a public servant performing or purporting to perform an official function. At trial, Officer Cox testified that when he was grabbed by Niles he did not know what Niles' intentions were. Therefore, Niles argues, no evidence of his *intent* was produced at trial, and a necessary element of the offense was not proved beyond a reasonable doubt.

Furthermore, Niles contends that he was resisting his own detention. Therefore, he argues, he could not be guilty of obstructing government administration because the statutory offense does not encompass the refusal by a person to submit to an arrest. 17–A M.R.S.A. § 751(2)(A).

■ " '[P]roof of the accused's intent at the time of the commission of the alleged criminal act may be drawn from the act itself or from the existing circumstances surrounding the incident, as well as from any other evidence having a legitimate tendency to shed light upon the accused's intent or mental state at the time.' " *State v. Estes*, Me., 418 A.2d 1108, 1113 (1980) *quoting State v. Anderson*, Me., 409 A.2d 1290, 1296 (1979). It is for the trier of fact to determine the Defendant's intent; Officer Cox's opinion is neither essential nor

---

3. The State does not contest either Defendant's standing to raise this issue. Thus standing is not a question in this Court. *State v. Blais*, Me., 416 A.2d 1253, 1256 n.2 (1980).

   Also, it is not certain that the proper remedy for an unlawful seizure in this case would be the suppression of all evidence obtained subsequent to the detention, including the Defendants' identities. Since we find no unlawful actions to have been taken by Officer Cox, we need not, and do not, decide that question.

4. As applied to the states by U.S.Const., amend. XIV.

would it necessarily be determinative of the issue. The evidence shows that Officer Cox was in uniform. He had stated in Niles' presence that Bushey was under arrest for assault. Niles grabbed Officer Cox's arm from behind and attempted to pull him away from Bushey at a time when Officer Cox was attempting to subdue her. This evidence amply supports the conclusions that Niles both had the necessary intent to interfere, and that he was not acting to resist his own detention.[5]

Turning to the case against Bushey, Officer Cox testified that he was not injured in any way as a result of Bushey's attack. Therefore the court below must have found that Bushey caused "offensive physical contact" to Officer Cox in order to have convicted Bushey of assault.

Bushey contends that at a minimum a subjective standard of proof must be met in proving "offensive physical contact." Since Officer Cox did not state that he personally found Bushey's attack to be "offensive," there was, her argument runs, insufficient evidence to meet a subjective standard of proof.

In addition, at oral argument Bushey contended that this case should be governed by our recent decision in *State v. John W.*, Me., 418 A.2d 1097 (1980). We deal with this latter argument first.

■ In *John W.* the defendant was convicted of disorderly conduct, 17–A M.R.S.A. § 501(2), arising out of *verbal* abuse of a police officer. There we recognized that "[a] narrow judicial interpretation of criminal statutes affecting speech is necessary in order to insure that they prohibit only speech which is not constitutionally protected." 418 A.2d at 1101. Granted, some forms of conduct in certain circumstances are so closely akin to "pure speech" as to be entitled to comprehensive protection under the First Amendment. *Tinker v. Des Moines Community School District*, 393 U.S. 503, 505–06, 89 S.Ct. 733, 735–36, 21 L.Ed.2d 731 (1969); *accord, Spence v. Washington*, 418 U.S. 405, 409–10, 94 S.Ct. 2727, 2729–30, 41 L.Ed.2d 842 (1974); *Cohen v. California*, 403 U.S. 15, 18, 91 S.Ct. 1780, 1784, 29 L.Ed.2d 284 (1971). However, "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). The communicative element in Bushey's conduct, if any, was insufficient to bring into play the First Amendment.

Adverting to Bushey's first argument, this Court has not before been called upon to determine the meaning of "offensive physical contact."[6] In determining whether the trier of fact must apply a subjective standard of proof, one dependent upon the victim's subjective reaction, either alone or in addition to an objective standard, we look to the functions of criminal law.

The aim of criminal law is to protect the public against harm. The state brings criminal proceedings to protect the public interest, not to compensate the victim. Criminal law emphasizes not pecuniary damage to the victim (as does tort law), but rather the immoral or "bad" behavior of the defendant. W. LaFave and A. Scott, *Handbook on Criminal Law* § 3, at 11–12 (1972).

In light of these functions, it would be inappropriate to require the satisfaction of a subjective standard for proving offensive physical contact. The focus of criminal law is upon the defendant's behavior; the question to be asked is whether it is in the public interest to let such behavior go unpunished. If a subjective standard were always to be applied, conduct which the public at large condemns would at times go

---

5. We therefore need not reach, and do not decide, the question of whether 17–A M.R.S.A. § 751(2)(A) applies where a defendant refuses to submit to a "stop" (as opposed to an arrest).

6. *See State v. Carmichael*, Me., 405 A.2d 732, 735 (1979).

unpunished because of the fortuitous circumstance that the victim was unusually insensitive or slow to take offense. Moreover, if a subjective standard alone were applied, innocuous physical contact such as a tap on the shoulder might become the basis for an assault conviction should the "victim" be unusually sensitive or easily offended. It follows that a subjective standard need not necessarily be satisfied in determining whether Bushey's actions constituted offensive physical contact to Officer Cox. *Accord, State v. Keller*, 40 Or. App. 143, 594 P.2d 1250, 1252 (1979).

■ We do not suggest that evidence of a "victim's" subjective reaction would not be *relevant* to the determination of this issue. We hold only that where there is no evidence of a "victim's" subjective view of the physical contact, then an objective evaluation that the contact is offensive may be sufficient to support a conviction. We express no opinion as to whether in the case before us there was in fact no evidence of Officer Cox's subjective view of the physical contact in question.

■ In light of the facts in this case, the trier of fact could rationally have concluded that Bushey caused offensive physical contact to Officer Cox under any objective test.

The entry is:

Appeals denied.

Judgments affirmed.

All concurring.