1999 ME 100

**STATE of Maine**

v.

**David YORK.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 17, 1999.

Decided June 30, 1999.

---

Geoffrey Rushlau, District Attorney, F. Todd Lowell, Ast. Dist. Atty., Bath, for State.

Nathaniel Hussey, Hallowell, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

WATHEN, C.J.

[¶ 1] Defendant David York appeals from a judgment of conviction entered in the Superior Court (Sagadahoc County, *Delahanty, J.*) on a jury verdict finding him guilty of disorderly conduct in violation of 17–A M.R.S.A. § 501 (1983 & Supp. 1998). On appeal, defendant contends that the evidence was insufficient to support his conviction. The State responds by arguing that defendant's appeal is moot. Finding that defendant's appeal is not moot but is lacking in merit, we affirm the judgment.

[¶ 2] The jury would have been warranted in finding the following facts: Defendant approached Thomas Roche, a financial screening officer for the court system, on September 10, 1997, in the West Bath District Court, in connection with a request for a court-appointed attorney in a

criminal case. Defendant, accompanied by his mother, was agitated when he first entered the office. Defendant's mother answered most of the questions Roche asked, although Roche repeatedly requested that defendant answer the questions himself. Defendant left the interview to return to the courtroom and inform the judge that he was not willing to deal with Roche. At the court's behest, defendant then returned to Roche's office and began the procedure again. After learning that defendant was neither employed nor disabled, Roche informed him that he would have to complete a job search. Defendant then called Roche a "fucking asshole" in a very loud voice.

[¶ 3] Defendant left Roche's office and called the two court security officers standing outside the office "fucking assholes" when they asked him to leave the building. As Roche attempted to walk past defendant in the hall of the courthouse, defendant prepared to spit on Roche and Roche pushed defendant's shoulder to turn him away. Defendant then screamed for Roche to be arrested for assaulting him. Defendant was arrested by a court security officer for disorderly conduct.

[¶ 4] The jury found defendant guilty of disorderly conduct and the court sentenced him to a jail term of ten days. After a one-day stay of execution to arrange for child care, defendant began and completed his sentence before filing a timely notice of appeal.

[¶ 5] As a preliminary matter, the State urges us to dismiss defendant's appeal as moot, because he has voluntarily completed his sentence. Traditionally, we decline to decide issues "which by virtue of valid and recognizable supervening circumstances have lost their controversial vitality." *State v. Gleason*, 404 A.2d 573, 578 (Me.1979). Our rationale is that "courts should not give gratuitous advice and litigation should be brought to a final conclusion." *State v. Snowman*, 1997 ME 184, ¶ 5, 698 A.2d 1057, 1058. "The test for mootness is whether sufficient practical ef-

fects would flow from a retrial to justify the expenditure of limited judicial resources." *State v. Jordan*, 1998 ME 174, ¶ 10, 716 A.2d 1004, 1006. On the other hand, "[a]n exception to the mootness rule exists when relief is justified on the basis that sufficient collateral consequences will result from that relief." *Id.*

[¶ 6] In *State v. Haskell*, 492 A.2d 1265 (Me.1985), a criminal case involving only a fine, we held that an appeal was moot because the defendant paid his fine in full before filing a notice of appeal. *See id.* at 1266. In *State v. Lewis*, 406 A.2d 886 (Me.1979), when a defendant voluntarily paid a fine after filing a notice of appeal, we held that the appeal was moot because there was nothing upon which the appeal could operate. *See id.* at 888. In *State v. Snowman*, we dismissed an appeal from the defendant's conviction for disorderly conduct as moot because her fifteen-day sentence had been suspended and she had completed her one-year term of probation at the time the appeal was heard. We concluded that "prudential considerations of finality and judicial economy prevail over a defendant's desire to clear her record" and noted that "[w]hen drawing the line between these practical values and clearing a defendant's record, we look to the actions of the defendant." *Id.* at 1058. Of particular note in *Snowman* was the fact that pursuant to M.R.Crim. P. 38 the defendant's probationary term was automatically stayed pending her appeal but she voluntarily requested that it be reinstated. *See id.* In *State v. Jordan*, a case in which the defendant involuntarily completed his sentence before retrial following a successful appeal, we held that the original indictment retained "controversial vitality" and was not moot. *See Jordan*, 1998 ME 174, ¶ 13, 716 A.2d at 1007. As we noted in *State v. Jordan*, a defendant, as in the present case, who involuntarily serves a sentence has an interest in avoiding the collateral consequences of a conviction. *See id.*

[¶ 7] On the merits of his appeal, defendant contends that his constitutional right

to freedom of speech, protected by article 1, section 4, of the Maine Constitution, and the first amendment of the United States Constitution, was violated. The statute defines disorderly conduct in part as when a person:

[i]n a public or private place ... knowingly accosts, insults, taunts or challenges any person with offensive, derisive or annoying words, or by gestures or other physical conduct, which would in fact have a direct tendency to cause a violent response by an ordinary person in the situation of the person so accosted, insulted, taunted or challenged ....

17–A M.R.S.A. § 501(2) (1983).

[¶ 8] Defendant relies on *State v. John W.,* 418 A.2d 1097 (Me.1980), in which we noted that there is "a legitimate governmental interest in preventing words 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace,' but language which is merely distasteful cannot be punished." *Id.* at 1102 (citation omitted). As we noted, the statutory definition of disorderly conduct "represents the legislative definition of conduct coming within the fighting words area of unprotected speech." *Id.* at 1101. Moreover, "[a]pplication of a criminal statute must be restricted 'to a kind of speech that produces or is likely to produce a clear and present danger of substantive evils that Maine constitutionally may seek to prevent.'" *Id.* at 1102 (citing *State v. Porter,* 384 A.2d 429, 432 (1978)). In testing the constitutionally of a conviction under a Maine statute, "[a] court [must] make its own inquiry into the imminence and magnitude of the danger said to flow from the particular utterance and then to balance the character of the evil, as well as its likelihood, against the need for free and unfettered expression." *Id.* (quoting *Landmark Communications, Inc. v.*

*Virginia,* 435 U.S. 829, 843, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978)).

[¶ 9] In *John W.,* we held that a juvenile defendant's abusive language to the police was constitutionally protected. *See John W.,* 418 A.2d at 1108. We noted that "the police had accosted the juvenile and his sister and had arrested his sister." *Id.* After concluding that, under such circumstances, police officers "would not so readily respond violently" to provocative speech, we upheld the juvenile's right to protest the arrest. *See id.* at 1106. On the other hand, in *State v. Griatzky,* 587 A.2d 234 (Me.1991), we held that the defendant's speech and conduct constituted a clear and present danger of an immediate breach of the peace when the defendant protested the arrest of another without provocation in the presence of a large and unruly group. *See id.* at 238. Moreover, in *State v. Bushey,* 425 A.2d 1343 (Me. 1981), we held that when a defendant grabbed a uniformed officer, his physical conduct was not protected by the first amendment. *See id.* at 1346.

[¶ 10] In this case, viewed objectively, defendant's words and conduct would in fact have a direct tendency to cause a violent response by an ordinary person. Defendant's conduct included not just speech, but also the physical acts of declining obstreperously to leave the building when asked, accosting Roche, and attempting to spit on him. Such conduct is not constitutionally protected and is sufficient to support the conviction.

The entry is:

Judgment affirmed.