MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:      2014 ME 48
Docket:        Cum-12-427
Argued:        September 10, 2013
Decided:       March 27, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## JASON M. LOVEJOY

SAUFLEY, C.J.

[¶1]  In this appeal, we consider whether a person's pre-arrest silence may be offered as evidence of consciousness of guilt in a criminal prosecution without offending the Fifth Amendment of the United States Constitution and article I, section 6 of the Maine Constitution.  We also consider allegations of prosecutorial misconduct.  Because we conclude that a defendant's silence following the explicit assertion of the right to consult with counsel cannot be used as evidence of consciousness of guilt and because the prosecutor improperly opined on witness credibility, we vacate the judgments of conviction entered in this case.

[¶2]  Jason M. Lovejoy appeals from judgments of conviction of two counts of gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B), (4) (Supp. 2000),[1]

---

[1] Section 253(1)(B) has since been amended to move information regarding the class of the crime from subsection (4) into subsection (1)(B), see P.L. 2001, ch. 383, §§ 14, 18 (effective Jan. 31, 2003) (codified as subsequently amended at 17-A M.R.S. § 253(1)(B) (2013)), and to modify the syntax when a

2

entered by the court (*Warren, J.*) after a jury trial. In addition to the issues that we address in this opinion, Lovejoy challenges the sufficiency of the evidence to convict him of the crimes, argues that there were other instances of prosecutorial misconduct, and challenges the court's determination of his sentence. Without further discussion, we conclude that the other challenged prosecutorial conduct did not undermine the fairness of the proceedings and that, in light of the alleged victim's testimony, Lovejoy's challenge to the sufficiency of the evidence fails. We do not consider the sentencing issues in this appeal because we vacate the judgments of conviction based on the violation of Lovejoy's constitutional right to remain silent and the prosecutorial statements in closing arguments that deprived him of a fair trial.

## I. BACKGROUND

[¶3] In the fall of 2010, at the age of fifteen, Lovejoy's daughter told her best friend that her father had sexually assaulted her beginning when she was about five years old. She later informed her mother, and ultimately the Portland Police Department began an investigation. A Portland police detective had one or two telephone conversations with Lovejoy. Lovejoy, who was living in North Carolina at the time, denied the allegations and said that he wanted to talk to a lawyer. He did not return subsequent telephone calls from the police.

new paragraph was added, *see* P.L. 2003, ch. 711, § B-2 (effective July 30, 2004) (codified at 17-A M.R.S. § 253(1)(B) (2013)).

[¶4]  In the fall of 2011, Lovejoy was arrested and charged by indictment with two counts of gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B), for conduct occurring between October 1, 2000, and January 1, 2003.  After a February 2012 trial resulted in a mistrial, the court held a two-day jury trial the following month.  The State called several witnesses, including, among others, Lovejoy's daughter (the alleged victim), the friend in whom she confided, the alleged victim's mother, the investigating Portland police detective, and a nurse practitioner at the Spurwink Child Abuse Program.  Lovejoy presented testimony from his acquaintances and from his current wife.  He did not testify.

[¶5]  Lovejoy's daughter, who was sixteen years old at the time of the trial, testified that, when she was between the ages of about five and eight, Lovejoy would have her sit on his lap while he showed her pornographic pictures and videos on a computer in his bedroom.  She testified that he touched her vagina with his fingers and, on multiple occasions, penetrated her vagina and anus with his penis.  She also testified about how she disclosed that he had assaulted her.  The nurse practitioner who physically examined Lovejoy's daughter as a teenager testified that she did not find any physical evidence of sexual assault.  She also testified, however, that the absence of physical evidence did not rule out the possibility that the alleged assaults had, in fact, occurred.

4

[¶6]   During direct examination of the police detective, the prosecutor questioned the detective about his attempts to contact Lovejoy before Lovejoy's return to Maine and subsequent arrest.  The detective testified that he had one or two telephone conversations with Lovejoy and that he informed Lovejoy of the allegations of sexual assault.  When the prosecutor asked how Lovejoy had responded to this information, defense counsel requested a sidebar conference. Counsel asked that the witness be instructed not to mention that Lovejoy "told him he wanted to talk to a lawyer," but counsel did not explicitly seek to prevent testimony regarding Lovejoy's refusal to speak with the detective.  Thus, the detective was told only to avoid referencing Lovejoy's request for counsel.

[¶7]   After the sidebar conference, the prosecutor asked the detective to describe to the jury Lovejoy's reaction during the phone conversation.  The detective testified that Lovejoy denied the allegations of abuse with a "kind of flat affect" and "no emotion."[2]  The detective then testified that, after this initial conversation, he attempted to contact Lovejoy at least two more times.  The prosecutor asked the detective whether he had received any return calls, and the detective responded that he had not.  The prosecutor asked, "Was this odd or unusual in your mind?"  The court sustained Lovejoy's objection to this question.

---

[2]  There was no objection to this testimony, nor was there error in its admission.  *See Miranda v. Arizona*, 384 U.S. 436, 478 (1966) ("Volunteered statements of any kind are not barred by the Fifth Amendment . . . .").

[¶8]  During her closing argument, the prosecutor commented on Lovejoy's silence in response to police phone calls.  She asked the jury to "[c]onsider what we call the defendant's consciousness of guilt," and referenced the fact that, despite the detective's phone calls and messages, Lovejoy "never kept in contact" and "never chose to call" or come "up to Maine to clear up the charges in person."

[¶9]  The prosecutor also stated, "I would argue to you that [the victim] was an entirely credible witness" and further argued, "I would like you to consider the testimony of all of the witnesses, the State's and the defendant's.  All were consistent in their testimony.  *They were all credible.*"  (Emphasis added.)[3]

[¶10]   After the prosecutor concluded her closing argument, Lovejoy requested a sidebar conference and moved for mistrial because of the statements concerning the victim's credibility.  The court agreed that the prosecutor had improperly expressed an opinion supporting the victim's credibility but denied the motion for a mistrial, indicating that it would provide a curative instruction at the end of closing arguments.

[¶11]   After defense counsel argued, "[t]his case is going to hinge on whether or not you believe [the victim]," the prosecutor, in her rebuttal argument, again asserted the victim's credibility.  Specifically, she argued that the victim's

---

[3]  The March 2012 trial occurred before we extensively discussed prosecutorial limits in *State v. Dolloff*, 2012 ME 130, 58 A.3d 1032, in November 2012.

testimony that she told Lovejoy to stop sexually abusing her at a certain age was "entirely credible."

[¶12] The court provided instructions to the jury, including the following:

In particular, let me remind you that the opening statements and the closing arguments of the attorneys are not evidence . . . . [T]o the extent you are hearing arguments from the attorneys that include their personal opinions, you should disregard that entirely. . . . [Y]ou should remember that it's not the attorney's opinion, it is your own evaluation of the evidence that . . . you need to make. You have to make your own decisions as to credibility . . . .

The court also instructed the jury not to consider Lovejoy's exercise of the right not to testify as evidence of his guilt. The jury returned a verdict finding Lovejoy guilty of both counts of gross sexual assault.

[¶13] The court held a sentencing hearing on August 10 and 24, 2012, and on August 24, 2012, the court imposed the sentence. After determining a basic sentence of fifteen years, *see* 17-A M.R.S. § 1252-C(1) (2013), the court, applying 17-A M.R.S. § 1252-C(2) (2013), determined a maximum period of imprisonment of twenty years, relying, in part, on the aggravating factor of certain uncharged conduct by the defendant concerning abuse of his younger daughter and his half-sister. The court imposed a final sentence of twenty years with sixteen years unsuspended "in light of the seriousness" and "gravity of the offense." *See* 17-A M.R.S. § 1252-C(3) (2013).

[¶14] Concerning the appropriate term of probation, the court, applying 17-A M.R.S.A. § 1202(1-A) (Supp. 2000)[4] and 17-A M.R.S.A. § 257 (Supp. 2000),[5] extended the term of Lovejoy's probation from six years to ten years

---

[4] This statute has since been amended. *See* P.L. 2009, ch. 608, § 8 (effective July 12, 2010) (codified at 17-A M.R.S. § 1202(1-A) (2013)). At the relevant time, the statute provided:

**§ 1202. Period of probation; modification and discharge**

**1.** *A person convicted of a Class A crime may be placed on probation for a period not to exceed 6 years*; for a Class B or Class C crime, for a period of probation not to exceed 4 years; and for Class D and Class E crimes, for a period not to exceed one year.

**1-A.** Notwithstanding subsection 1:

**A.** *The period of probation* for a person convicted under chapter 11 or section 854, excluding subsection 1, paragraph A, subparagraph (1), *may be extended by up to 4 years for a Class A crime*, by up to 2 years for a Class B or Class C crime and by up to one year for a Class D or Class E crime *if the court finds that the additional time is needed* to provide sex-offender treatment to the person or *to protect the public from the person because, based on one or more of the factors in section 257, the court determines that the person is a high-risk sex offender*; and

**B.** The period of probation for a person sentenced as a dangerous sexual offender pursuant to section 1252, subsection 4-B is any term of years.

17-A M.R.S.A. § 1202 (Supp. 2000) (emphasis added).

[5] This statute has since been amended. *See* P.L. 2007, ch. 476, § 3 (effective June 30, 2008) (codified at 17-A M.R.S. § 257 (2013)). At the relevant time, the statute provided:

**§ 257. Factors aiding in predicting high-risk sex offenders for sentencing purposes**

**1.** In assessing for sentencing purposes the risk of repeat offenses by a person convicted of a crime under chapter 11, a court shall treat each of the following factors, if present, as increasing that risk:

**A.** *The victim of the crime is prepubescent*;

**B.** The victim of the crime is the same gender as the offender;

**C.** The victim of the crime is a total stranger to the offender; and

8

"based on a finding that his victim was prepubescent." The court rejected Lovejoy's argument that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, the court could not extend the term of his probation in the absence of a jury finding that the victim was prepubescent when the assaults occurred.

[¶15] Pursuant to 15 M.R.S. § 2115 (2013) and M.R. App. P. 2(b)(2)(A), Lovejoy timely appealed from the judgments of conviction. After the Sentence Review Panel granted Lovejoy's request for leave to appeal, *see* 15 M.R.S. § 2151 (2013); M.R. App. P. 20, we consolidated his sentence appeal with his appeal from the convictions. We do not, however, reach the contentions raised in his sentence appeal because we vacate the convictions.

## II. DISCUSSION

[¶16] The two issues that determine the outcome of this appeal are (A) the admissibility of evidence concerning Lovejoy's silence when approached by the police before his arrest and (B) the effect of prosecutorial comments regarding

---

> **D.** The offender has been previously convicted of a crime under chapter 11 or previously convicted under the laws of the United States or any other state for conduct substantially similar to that contained in chapter 11.
>
> A court may also utilize any other factor found by that court to increase the risk of repeat offenses by a person convicted of a crime under chapter 11.

17-A M.R.S.A. § 257 (Supp. 2000) (emphasis added).

witness credibility on the fairness of Lovejoy's trial. We consider each issue separately.

A.    Testimony Regarding Pre-Arrest Silence

[¶17]  Lovejoy argues that the prosecutor violated the Fifth Amendment of the United States Constitution and article I, section 6 of the Maine Constitution by eliciting testimony that Lovejoy did not return phone calls from police and by arguing to the jury that his failure to explain what happened demonstrated consciousness of guilt. Lovejoy contends that he was deprived of a fair trial and that the prosecution improperly suggested that he had some obligation to negate the victim's testimony.

[¶18]  Pursuant to the United States Constitution, "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. The Maine Constitution contains a similar provision:  "The accused shall not be compelled to furnish or give evidence against himself or herself . . . ." Me. Const. art. I, § 6. We interpret the Maine Constitution to be coextensive with the United States Constitution in this context. *See, e.g.*, *State v. Millay*, 2001 ME 177, ¶¶ 14-20, 787 A.2d 129.

[¶19]  Because Lovejoy did not explicitly object to the testimony and the prosecutor's comments concerning his pre-arrest silence, the trial court did not address the application of the constitutions in this context, and we review for

obvious error. *See* U.C.D.R.P.-Cumberland County 52(b); M.R. Crim. P. 52(b); *State v. Pabon*, 2011 ME 100, ¶ 18, 28 A.3d 1147. For us to vacate a conviction based on the obvious error standard of review,

> there must be (1) an error, (2) that is plain, and (3) that affects substantial rights. If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings.

*Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147. An error is plain if it is so clear under current law that the trial court can be expected to address it, even absent the defendant's timely objection to it. *State v. Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032. An error affects the defendant's substantial rights "if the error was sufficiently prejudicial to have affected the outcome of the proceeding." *Id.* ¶ 37 (quotation marks omitted).

[¶20] Measures that protect the Fifth Amendment right to remain silent exist in multiple contexts and, in most contexts, include a prohibition against the prosecution's reliance on that silence as evidence of guilt.[6] For example, there can be no question that the Fifth Amendment "prevents the prosecution or the court from commenting on a defendant's decision not to testify at his criminal trial."

---

[6] *Nontestimonial* actions such as flight, hiding, or resisting arrest may be admissible as evidence of consciousness of guilt. *See United States v. Francois*, 715 F.3d 21, 32 (1st Cir. 2013) (citing cases); *see also Doe v. United States*, 487 U.S. 201, 207 (1988) (stating that the Fifth Amendment protects a person from being incriminated by his or her own compelled *testimonial* communications); *cf. State v. Hassan*, 2013 ME 98, ¶¶ 20-27, 82 A.3d 86 (upholding the admission of evidence related to a police standoff as evidence of consciousness of guilt).

*State v. Patton*, 2012 ME 101, ¶ 15, 50 A.3d 544 (citing *Griffin v. California*, 380 U.S. 609, 615 (1965)). Similarly, a defendant's post-arrest, in-custody, unambiguous assertion of a decision not to speak to law enforcement must be scrupulously honored and cannot be used against the defendant at trial. *See Doyle v. Ohio*, 426 U.S. 610, 617-19 (1976); *Miranda v. Arizona*, 384 U.S. 436, 467-79 (1966); *State v. Grant*, 2008 ME 14, ¶¶ 20, 38, 939 A.2d 93.

[¶21] Whether those same Fifth Amendment protections "extend to prevent the introduction in evidence of a defendant's pre-arrest, pre-*Miranda* silence in the State's case-in-chief," *Patton*, 2012 ME 101, ¶ 15, 50 A.3d 544, has not yet been decided by the United States Supreme Court, *see Salinas v. Texas*, 570 U.S. ---, 186 L. Ed. 2d 376 (2013).[7] The federal circuits are divided on the question of whether the Fifth Amendment prevents the prosecution from using a defendant's noncustodial, pre-arrest silence in its case-in-chief.[8] *Compare Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000) (holding that evidence of pre-arrest silence may not be admitted in a criminal trial as evidence of the defendant's guilt); *United*

---

[7] In *Salinas v. Texas*, 570 U.S. ---, 186 L. Ed. 2d 376 (2013), the United States Supreme Court found it unnecessary to resolve the issue that we address today. There, the plurality reasoned that the evidence of silence could be admitted as evidence of guilt because Salinas did not explicitly invoke his privilege against self-incrimination when he ceased answering questions posed by police. *Id.* at 383-89 (plurality opinion). The concurring opinion condoned the State's use of the evidence because it reasoned that the privilege against self-incrimination does not apply when a defendant is not in custody and is therefore not *compelled* to incriminate himself or herself. *Id.* at 389-90 (Thomas, J., concurring).

[8] The Supreme Court has held that "the use of prearrest silence to *impeach a defendant's credibility* does *not* violate the Constitution." *Jenkins v. Anderson*, 447 U.S. 231, 240-41 (1980) (emphasis added). Here, Lovejoy did not testify, and we do not address how the holding of *Jenkins* might be applied in different circumstances.

*States v. Burson*, 952 F.2d 1196, 1200-01 (10th Cir. 1991) (same)*, with United States v. Oplinger*, 150 F.3d 1061, 1066-67 (9th Cir. 1998) (holding that a defendant's pre-arrest, pre-*Miranda* silence may be used as substantive evidence of guilt), *overruled in part on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010); *United States v. Zanabria*, 74 F.3d 590, 593 (5th Cir. 1996) (same).

[¶22]  On this question, we have concluded that individuals are endowed with the Fifth Amendment's protections against compelled self-incrimination both before and after arrest.  *See State v. Diaz*, 681 A.2d 466, 468 (Me. 1996).  We reached this holding in a case in which the defendant's pre-arrest, noncustodial statement refusing to answer a state trooper's question was admitted in evidence, and the prosecution referred to the defendant's refusal to speak in its closing and rebuttal argument.  *Id.* at 468-69.  We held that the Fifth Amendment "right to remain silent, unlike the right to counsel, attaches *before* the institution of formal adversary proceedings" and that the Constitution "clearly requires the exclusion of evidence of the defendant's failure to answer [the state trooper's] question."  *Id.* (quotation marks omitted).

[¶23]  In another recent case, the State offered evidence in its case-in-chief that a suspect stated, before arrest and without having received *Miranda* warnings, that he needed to speak with counsel and, after making that statement, remained

silent. *Patton*, 2012 ME 101, ¶¶ 12, 15-16, 50 A.3d 544. The State conceded error, and we reviewed the error to determine whether it was harmless. *Id.* ¶ 16. In that review, we concluded that the error was harmless because the evidence presented at trial was strong and "the State did not seek to capitalize on . . . testimony" that the defendant told police he needed to talk to his lawyer. *Id.* ¶ 18. Apart from the admitted testimony, the State did not refer to the defendant's expressed desire to speak with his attorney in any other way, "either through its questioning of witnesses or in closing argument." *Id.* "[I]t was never suggested to the jury that [the defendant's] statement to the officer should be viewed as evidence of his guilt." *Id.* We explicitly distinguished *Diaz*, noting that in that case, "the State encouraged the jury to infer guilt from the defendant's silence because the State referred to the defendant's failure to answer an officer's questions *both in its closing argument and in rebuttal*." *Id.* ¶ 18 n.2 (emphasis added).[9]

---

[9] As is clear from these two cases, the enterprise of determining whether *the fact of the person's silence* is admissible in a criminal trial as evidence of guilt differs from the consideration of whether a *confession* is admissible when it was obtained through police questioning after an individual has attempted to invoke the right to remain silent or has ambiguously referred to that right. *See, e.g.*, *State v. King*, 1998 ME 60, ¶¶ 7, 9, 708 A.2d 1014. Specifically, we are determining not whether the police violated a constitutional right by continuing questioning but rather whether the prosecutor violated a constitutional right by offering a person's silence as evidence of his guilt.

Also inapplicable when assessing the admissibility of pre-arrest silence is the bright line drawn at the point of custody. Courts determine the moment at which custody began for purposes of identifying the point after which law enforcement had the responsibility to *advise* the individual of his or her rights. *See Miranda*, 384 U.S. at 444. The point at which a person is in custody should not, however, be confused with the point at which the right to remain silent attaches. *Cf. Salinas*, 570 U.S. ---, 186 L. Ed. 2d at

14

[¶24] We distinguish the factual context before us from that which arises when, as in *Salinas*, 570 U.S. ---, 186 L. Ed. 2d 376, a defendant is voluntarily speaking with law enforcement officers and then simply ceases speaking without any clear indication of an intention to exercise the right not to be a witness against himself. *See id.* at 383-89 (plurality opinion) (reasoning that an express invocation of the right to remain silent is necessary in such circumstances). In contrast to those facts, Lovejoy specifically terminated communication by first telling the investigating detective during a telephone conversation that he wanted to speak with a lawyer and then remaining silent by not returning the detective's telephone calls. *See Patton*, 2012 ME 101, ¶ 15, 50 A.3d 544.

[¶25] Although Lovejoy did not explicitly state that he was also exercising his right against compelled self-incrimination, we have never required the use of any specific words for a person to enjoy constitutional protection for his or her silence. *See id.*; *see also, e.g.*, *Diaz*, 681 A.2d at 467-69 (holding that the defendant exercised the Fifth Amendment right against self-incrimination when he said that he did not think he should answer a police officer's questions). "[N]o ritualistic formula is necessary in order to invoke the privilege." *Quinn v. United States*, 349 U.S. 155, 164 (1955). We do, however, require that the record

---

389-90 (Thomas, J., concurring) (reasoning that without custody, there is no governmental compulsion to speak). As we have held, an individual may exercise the right to remain silent before any charges are pending. *See State v. Diaz*, 681 A.2d 466, 468-69 (Me. 1996).

demonstrate the defendant's intention to exercise the constitutional right against compelled self-incrimination. *See Diaz*, 681 A.2d at 467-69. Thus, in many contexts, a defendant is not deemed to have exercised the constitutionally protected right against compelled self-incrimination by virtue of silence alone. *See Salinas*, 570 U.S. at ---, 186 L. Ed. 2d at 386 (plurality opinion) ("A witness does not expressly invoke the privilege by standing mute.").

[¶26] To determine whether a defendant did express the intention to exercise this Fifth Amendment right, a court must consider the specific circumstances in which a defendant was questioned and the defendant's response to that questioning. Here, Lovejoy terminated a telephone conversation with the investigating detective upon stating that he wanted to speak with a lawyer[10] and then did not return the detective's subsequent telephone calls. These facts provide sufficient information to demonstrate Lovejoy's invocation of his right against self-incrimination for purposes of the Fifth Amendment and article I, section 6 of the Maine Constitution. *See United States v. Okatan*, 728 F.3d 111, 115, 119 (2d Cir. 2013) (holding, after *Salinas* was decided, that a request for a lawyer in response to noncustodial questioning constitutes an invocation of the privilege

---

[10] The record here contains no admitted evidence regarding the content of Lovejoy's statement to the detective. Rather, because the State and Lovejoy agreed that that statement was inadmissible, the record contains only the uncontested assertion by Lovejoy's counsel at sidebar that Lovejoy had stated to the detective that he wanted to talk to a lawyer. Because the State does not challenge the factual representation made by Lovejoy's counsel, we accept as fact that Lovejoy made this statement to the detective.

against self-incrimination); *Patton*, 2012 ME 101, ¶ 15, 50 A.3d 544 (holding, before *Salinas* was decided, that a noncustodial request to speak with counsel, before *Miranda* warnings were given, constituted an assertion of the Fifth Amendment right against compelled self-incrimination).

[¶27]  Although, by agreement, the prosecutor avoided eliciting testimony about Lovejoy's statement that he wanted to speak with an attorney, she did elicit testimony that Lovejoy did not return the detective's calls.  She also argued in her closing argument that this silence evidenced consciousness of guilt.  Because the prosecutor, as in *Diaz*, sought to capitalize on the improperly admitted testimony of Lovejoy's failure to respond to the police detective by arguing that it demonstrated Lovejoy's consciousness of guilt, the testimony and argument constituted a violation of the Fifth Amendment and article I, section 6 of the Maine Constitution.  *See Patton*, 2012 ME 101, ¶ 18 n.2, 50 A.3d 544; *Diaz*, 681 A.2d at 468-69; *see also State v. Glover*, 2014 ME 49, ¶ 11, --- A.3d --- (noting that the "probative value of a defendant's exercise of a constitutional right is minimal at best").

[¶28]  In reviewing the admission of the testimony in the context of this trial for obvious error, *see Pabon*, 2011 ME 100, ¶ 18, 28 A.3d 1147, we conclude that there is "(1) an error, (2) that is plain," *id.* ¶ 29, given our holding in *Diaz*, 681 A.2d at 468-69.  *See also Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032.  We further

conclude that the error (3) "affects substantial rights," *Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147, because the evidence not only was offered at trial but also was emphasized in closing arguments in a case in which there was no physical evidence linking Lovejoy to the crime and the verdict turned entirely on the credibility of the witnesses. In such circumstances, the error was sufficiently prejudicial that it could have affected the outcome of the proceeding. *Cf. Dolloff*, 2012 ME 130, ¶ 53, 58 A.3d 1032.

[¶29] Finally, because of the improperly admitted evidence and the subsequent argument that Lovejoy declined to speak with police, we conclude that "(4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147; *see also id.* ¶ 27 (explaining that if a defendant claims a constitutional error, the appellate discretion afforded by the fourth criterion of obvious error review—whether the error seriously affects the fairness and integrity or public reputation of judicial proceedings—"is considerably reduced"). We reach this conclusion because the prosecutor argued to the jury that Lovejoy's silence should be considered as substantive evidence of his guilt, and although the court instructed that the jury should not hold against Lovejoy his decision not to testify, it made no similar instruction regarding his pre-arrest silence. *See Diaz*, 681 A.2d at 469. We cannot affirm a conviction that so evidently depended on the jury's determinations of

credibility when the prosecution offered evidence and argument that the defendant's decision not to speak to the police constituted evidence of his guilt.

B.     Prosecutorial Misconduct

[¶30]  Lovejoy argues that the prosecutor committed misconduct by stating that the witnesses were credible and by further commenting on the alleged victim's credibility even after the court determined that such statements were impermissible.

[¶31]  "When an objection has been made to a prosecutor's statements at trial, we review to determine whether there was actual misconduct and, if so, whether the trial court's response remedied any prejudice resulting from the misconduct."  *Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032 (citations omitted). Because Lovejoy objected to the prosecutor's statements concerning witnesses' credibility during closing argument, we review for harmless error.  *See* U.C.D.R.P.-Cumberland County 52(a); M.R. Crim. P. 52(a).

[¶32]  A prosecutor may not use "the authority or prestige of the prosecutor's office to shore up the credibility of a witness, sometimes called 'vouching.'"  *Dolloff*, 2012 ME 130, ¶ 42, 58 A.3d 1032 (citing *State v. Williams*, 2012 ME 63, ¶ 46, 52 A.3d 911).  In response to Lovejoy's objection, the court told counsel that, after the closing arguments, the court would issue a curative instruction to the jury making clear that the jury should disregard the attorneys'

expressed opinions about the credibility of witnesses. Unfortunately, the prosecutor again commented that the victim's testimony was credible during the rebuttal argument. Such repeated vouching for witness credibility, even after being warned not to, when considered in combination with references to Lovejoy's pre-arrest silence, cannot be regarded as harmless error.

## III. CONCLUSION

[¶33] Because Lovejoy's pre-arrest silence was used against him as evidence of consciousness of guilt in violation of the United States and Maine Constitutions, and because the prosecutor improperly vouched for the credibility of the witnesses, Lovejoy did not receive a fair trial. The two identified defects in Lovejoy's trial require us to vacate his convictions and remand this matter to the trial court for further proceedings. Accordingly, the issues raised in Lovejoy's sentence appeal are moot, and we do not discuss them further. *See State v. York*, 1999 ME 100, ¶ 5, 732 A.2d 859 (stating that "we decline to decide issues which by virtue of valid and recognizable supervening circumstances have lost their controversial vitality" (quotation marks omitted)).

The entry is:

> Judgments of conviction vacated. Remanded for
> further proceedings consistent with this opinion.

**On the briefs:**

Jeremy Pratt, Esq., Camden, for appellant Jason Lovejoy

Stephanie Anderson, District Attorney, and Deborah A. Chmielewski, Asst. Dist. Atty., Prosecutorial District No. Two, Portland, for appellee State of Maine

**At oral argument:**

Jeremy Pratt, Esq., for appellant Jason Lovejoy

Deborah A. Chmielewski, Asst. Dist. Atty., for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2011-5953
FOR CLERK REFERENCE ONLY