MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2014 ME 49
Docket:       Oxf-12-373
Argued:       December 18, 2013
Decided:      March 27, 2014

Panel:        SAUFLEY, C.J., and LEVY,* SILVER, MEAD, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## SPENCER T. GLOVER

SILVER, J.

[¶1]  Spencer T. Glover appeals his conviction in the trial court (*Clifford, J.*) of one count of gross sexual assault, Class B, 17-A M.R.S. § 253(2)(D) (2013). Glover argues that his pre-arrest refusal to voluntarily submit to a warrantless collection of a DNA sample is privileged under both the Maine Constitution and the Fourth Amendment of the United States Constitution.  He contends that the trial court committed obvious error by permitting the State to introduce evidence of his refusal and to argue to the jury that it could infer consciousness of guilt from the refusal.[1]  Because we conclude that the court committed obvious error by admitting evidence of Glover's exercise of a constitutional right for the purpose of

---

* Although not available at oral argument, Justice Levy participated in the development of this opinion. *See* M.R. App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

[1] Glover also argues that the court abused its discretion and committed obvious error by admitting the testimony of a sexual assault forensic examiner concerning the victim's description of the assault, and that Glover is entitled to a new trial because the State engaged in prosecutorial misconduct.

2

proving consciousness of guilt, we vacate the judgment.

## I. BACKGROUND

[¶2]  "Viewed in the light most favorable to the State, the following facts rationally support the verdict."  *See State v. Vrooman*, 2013 ME 69, ¶ 3, 71 A.3d 723.  One evening the victim drank heavily at a friend's apartment with several others, including Glover, who was a longtime friend with whom she had never had a sexual relationship.  Realizing that she was too intoxicated to drive home, the victim went to sleep in a spare bedroom.  She awoke in the middle of the night to find Glover sexually assaulting her.  When Glover realized that she was awake, he got up and left the room; however, he returned sometime later and attempted to remove her leggings.  She pushed him away, and he left.  The victim went back to sleep and returned home to her own apartment in the morning.  Later that day she contacted a friend, who accompanied her to the Sheriff's Department substation to report the assault and later took her to the hospital to be examined.

[¶3]  Denise Kidder, the registered nurse who examined the victim, testified at trial that her training as a sexual assault forensic examiner included interviewing victims, and that part of her examination is to assess victims' emotional risk and to provide resources.  The court ruled, over Glover's objection, that the victim's statement to Kidder describing the assault was admissible as a statement made for purposes of medical diagnosis.  Kidder testified:

She told me that she had woken up with—I don't know how she referred to him—on top of her and inside of her, and she said "He realized that I woke up and left." And she said she fell back asleep, and a short time—or sometime later, she's not sure how long, he came back and tried to remove her pants, and when she objected he left again.

[¶4] Matthew Noyes, a patrol deputy with the Oxford County Sheriff's Office, monitored a phone call the victim made to Glover to discuss the assault. During that phone call, portions of which were played for the jury, Glover adamantly denied sexually assaulting the victim and told her that it was "the most ridiculous thing [he] ever heard." When Noyes interviewed Glover, Glover denied that he had ever had any sexual contact with the victim. At trial, Noyes testified, without objection, that he asked Glover to provide a DNA sample in order to "clear" himself, but that Glover refused. Noyes eventually obtained a search warrant and procured a DNA sample from Glover.

[¶5] During trial, just before the State's DNA analyst took the stand, Glover offered to stipulate that sperm cells recovered from the victim were, in fact, his. The court nevertheless permitted the State to present the analyst's testimony that testing confirmed that the sperm cells recovered from the victim matched Glover's DNA profile. The analyst testified that the probability that the DNA came from someone other than Glover was one in 956 quadrillion.

4

[¶6]  Glover took the stand and testified that he had consensual sex with the victim, and that she had initiated it.  He also admitted on direct examination that he had lied to Noyes and to the victim when he denied that any sexual contact occurred.  Further, he explained that he did not initially agree to provide a DNA sample because he was afraid; he testified that a friend of the victim had come to his home, called him a rapist, and tried to attack him.  On cross-examination, the State inquired further into Glover's refusal to provide a DNA sample and elicited testimony that Officer Noyes was forced to obtain a search warrant.

[¶7]  During its closing argument, the State reminded the jury that Glover had lied throughout the investigation, and that he had refused to voluntarily provide a DNA sample.  The jury found Glover guilty.  He was sentenced to ten years in prison, with all but six suspended, as well as three years of probation. Glover appealed.

## II.  DISCUSSION

A.    Glover's Refusal to Voluntarily Provide a DNA Sample

[¶8]   Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  M.R. Evid. 403.  "Unfairly prejudicial evidence is evidence that has the potential to cause fact-finders to make findings based on something other than the facts in the case."  *Camp Takajo, Inc. v. SimplexGrinnell, L.P.*,

2008 ME 153, ¶ 14, 957 A.2d 68. We have recognized that the Maine Rules of Evidence do not require exclusion of evidence that is merely prejudicial. *See State v. Hurd*, 360 A.2d 525, 527 n.5 (Me. 1976) ("It should be emphasized that prejudice . . . means more than simply damage to the opponent's cause.") (quotation marks omitted). We review for an abuse of discretion a trial court's decision whether to exclude evidence pursuant to Rule 403. *State v. Turner*, 2001 ME 44, ¶ 5, 766 A.2d 1025. However, because Glover did not object to the State's introduction into evidence of his refusal to consent to the collection of a DNA sample, we review the trial court's admission of this evidence for obvious error affecting Glover's substantial rights. M.R. Evid. 103(e); M.R. Crim. P. 52(b).

[¶9] Obvious error review "calls for an evaluation of the error in the context of the entire trial record to determine . . . whether the error was so seriously prejudicial that it is likely that an injustice has occurred[.]" *State v. Pabon*, 2011 ME 100, ¶ 19, 28 A.3d 1147. "Obvious error" is "(1) an error, (2) that is plain, and (3) that affects substantial rights." *Id.* ¶ 29. If these conditions are met, we will reverse on the basis of an unpreserved error "only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.* "To establish that the error has affected a defendant's substantial rights, the defendant has a significant burden of demonstrating

6

a reasonable probability that [the error] affected the outcome of the proceeding." *State v. Woodard*, 2013 ME 36, ¶ 33, 68 A.3d 1250 (quotation marks omitted). To determine whether there is a reasonable probability that the error affected the outcome of the proceeding, we examine the evidentiary record. *Pabon*, 2011 ME 100, ¶ 36, 28 A.3d 1147.

[¶10]   The Fourth Amendment to the United States Constitution and article 1, section 5 of the Maine Constitution guarantee the right of the people to be secure against unreasonable searches and seizures.[2]   A warrantless search is unreasonable unless it is conducted pursuant to a recognized exception to the warrant requirement.   *State v. Melvin*, 2008 ME 118, ¶ 6, 955 A.2d 245. For Fourth Amendment purposes, obtaining a DNA sample by taking a cheek swab is a search, which is constitutional in the post-arrest context.   *See Maryland v. King*, 133 S.Ct. 1958, 1968-69, 1979 (2013).   However, in most circumstances, there is a constitutional right to refuse to submit to warrantless DNA sampling. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973).

[¶11]   The probative value of a defendant's exercise of a constitutional right is minimal at best.   There are myriad reasons that a person, whether innocent or not, may exercise a constitutional right.   *See, e.g., United States v. Hale*, 422 U.S.

---

[2]   Article 1, section 5 of the Maine Constitution and the corresponding provision of the Fourth Amendment generally offer identical protection; we have also recognized, however, that the Maine Constitution may offer additional protections. *State v. Hutchinson*, 2009 ME 44, ¶ 18 n.9, 969 A.2d 923.

171, 177 (1975); *United States v. Prescott*, 581 F.2d 1343, 1350-51 (9th Cir. 1978). This is especially true in the context of the Fourth Amendment right to be free from unreasonable government intrusions. The Fourth Amendment protects an individual's right "to be let alone," which is wholly independent from procedural concerns relating to the ascertainment of truth. *Schneckloth*, 412 U.S. at 242. Invocation of this right has no legitimate bearing on the likelihood that a defendant is guilty of a criminal offense.

[¶12] A defendant's refusal to consent to a search may, in some circumstances, tend to prove a defendant's consciousness of guilt. However, its minimal probative value will almost always be substantially outweighed by the danger of unfair prejudice, rendering it inadmissible pursuant to M.R. Evid. 403. This is especially true with respect to a lawful refusal to provide a DNA sample that has the potential to give the state unrestricted access to the subject's entire genetic make-up. In addition, as is true in the context of an accused's assertion of the Fifth Amendment right to remain silent, "[t]he danger is that the jury is likely to assign much more weight to the defendant's [assertion of the right] than is warranted. And permitting the defendant to explain the reasons for [asserting the right] is unlikely to overcome the strong negative inference that the jury is likely to draw . . . ." *Hale*, 422 U.S. at 180.

[¶13]   Here, the constitutional nature of the right at stake underscores the unfairly prejudicial nature of refusal evidence.   The questionable probative value of such evidence does not justify compromising the integrity of the constitutional protection.   "The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them."  *Grunewald v. United States*, 353 U.S. 391, 425 (1957) (Black, J., concurring).   "It would seem . . . illogical to extend protections against unreasonable searches and seizures, including the obtaining of a warrant prior to implementing a search, and to also recognize an individual's right to refuse a warrantless search, yet allow testimony regarding such an assertion of that right at trial in a manner suggesting that it is indicative of one's guilt."  *Commonwealth v. Welch*, 585 A.2d 517, 519 (Pa. Super. Ct. 1991).   Although the Fourth Amendment itself may not prohibit admission of evidence of a defendant's refusal to consent to a search for the purpose of proving consciousness of guilt, we conclude that the unfair prejudice that results from the use of evidence of the refusal for this purpose requires its exclusion, and that this error is plain.[3]

[¶14]   Here, Glover's exercise of his constitutional right to refuse to consent to a warrantless search was emphasized throughout the trial.   The State first discussed Glover's refusal in its opening statement, suggesting that the refusal was

---

[3]   We note that, in some instances, evidence of a defendant's refusal to provide a DNA sample may be admissible for other purposes. *See United States v. Harris*, 660 F.3d 47, 52 (1st Cir. 2011).

inconsistent with Glover's adamant denial that any sexual contact had occurred. The State then elicited Noyes's testimony that Glover refused to voluntarily provide a sample despite being asked twice to do so. When cross-examining Glover, the State again elicited testimony that he had initially refused to provide a DNA sample, and that Noyes had to get a search warrant as a result. Finally, in its closing argument, the State incorporated Glover's refusal into its theme that he had lied repeatedly throughout the investigation, saying, "But see, it got blown up. That whole story got blown up by the DNA, which, remember, he did not voluntarily give. Had to get a search warrant."

[¶15] Aside from the victim's testimony and her statements to others, there was no direct evidence that Glover's sexual acts with the victim were nonconsensual. Because Glover testified at trial that he had engaged in sexual intercourse with the victim, the State's case hinged on discrediting his testimony. Under these circumstances, there is a reasonable probability that the State's argument that his failure to consent to warrantless collection of his DNA persuaded the jury to disbelieve his testimony. Thus, the error affected his substantial rights.

[¶16] Finally, we consider whether "the injustice resulting from the error is truly manifest—that is, it is direct, obvious, and observable." *Pabon*, 2011 ME 100, ¶ 28, 28 A.3d 1147 (quotation marks omitted). Again, we conclude that the manner in which Glover's exercise of a constitutional right was used to penalize

him at trial is fundamentally unfair and contrary to the principles of justice that encourage the free exercise of constitutional rights. *See Grunewald*, 353 U.S. at 425 (Black, J., concurring) ("I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it."); *State v. Lovejoy*, 2014 ME 48, ¶ 29, --- A.3d --- ("We cannot affirm a conviction that so evidently depended on the jury's determinations of credibility when the prosecution offered evidence and argument that the defendant's [exercise of a constitutional right] constituted evidence of his guilt.").

[¶17]   Because we vacate on the basis of the trial court's admission of evidence of Glover's refusal to submit to a warrantless search for the purpose of proving consciousness of guilt, we do not reach Glover's argument that testimony from the nurse who examined the victim following the assault constituted inadmissible hearsay, nor do we address his contention that the State engaged in prosecutorial misconduct by using the terms "rape" and "rapist" throughout its opening statement and closing argument.

The entry is:

> Judgment vacated.   Remanded for further proceedings consistent with this opinion.

**On the briefs:**

James A. Billings, Esq., and Walter F. McKee, Esq., McKee, Billings, LLC, P.A., Augusta, for appellant Spencer Glover

Norman R. Croteau, District Attorney, and Joseph M. O'Connor, Asst. Dist. Atty., Office of the District Attorney, South Paris, for appellee State of Maine

Jamesa J. Drake, Esq. Maine Association of Criminal Defense Lawyers, Freeport, for amicus curiae Maine Association of Criminal Defense Lawyers

Adam Lamparello, Esq., and Charles MacLean, Esq., Indiana Tech Law School, Fort Wayne, Indiana, pro se amici curiae

**At oral argument:**

James A. Billings, Esq., for appellant Spencer Glover

Joseph M. O'Connor, Asst. Dist. Atty, for appellee State of Maine

Oxford County Superior Court docket number CR-2011-52
FOR CLERK REFERENCE ONLY