MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 119
Docket:        Aro-15-269
Argued:        May 5, 2016
Decided:       July 28, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

KEVIN W. CARTON

\*\*\*\*\*

STATE OF MAINE

v.

MICAH CARTON

JABAR, J.

[¶1]   Kevin W. Carton and Micah Carton appeal from judgments of conviction for unlawful trafficking in schedules drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2015), entered in the trial court (Aroostook County, *Stokes, J.*).  The Cartons challenge an order denying their motion to suppress evidence obtained in the course of police questioning and a warrantless search.  Because the Cartons did not object to the search, and because a public

safety exception to *Miranda v. Arizona*, 384 U.S. 436 (1966), existed at the time of the officer's questioning, we affirm the court's judgment.

## I. BACKGROUND

[¶2]   The following facts were found by the suppression court, are reviewed for clear error, and are supported by the record.  *See State v. Cote*, 2015 ME 78, ¶ 9, 118 A.3d 805.

[¶3]  On November 26, 2013, a Maine State Police trooper, who was also a certified member of the Maine Drug Enforcement Agency's Clandestine Drug Lab Enforcement Team (MDEA-CDLET), received a call instructing him to contact a State Police dispatcher with whom the officer was familiar.  The dispatcher informed the trooper that she suspected that a family member may have been involved in the production of methamphetamine.  The trooper proceeded to Amity to meet with the dispatcher and her brother-in-law, who owned a hunting camp where he permitted members of his family to stay during the hunting season.  The owner allowed the Cartons to stay at the camp with his permission for varying lengths of time.  The owner's son had previously informed him that he had seen his cousins, the Cartons, mixing chemicals inside a bottle while staying at the camp.

[¶4]  After the meeting in Amity, the trooper drove to the camp with the camp owner in his pickup truck.  During the drive, the camp owner informed the trooper that he owned the one-room hunting camp and gave the trooper permission to search it.

[¶5]  When the uniformed trooper entered the camp with the owner, one of the Cartons asked the officer, "What's up?"  The trooper responded by informing the Cartons that he was there to "look around."  Neither Kevin nor Micah Carton objected to the search of the camp.

[¶6]  On the floor of the bunkroom, the trooper observed a plastic bottle containing off-white liquid, which he believed to be liquid methamphetamine. He also observed a backpack containing drain cleaner and a container of muriatic acid.  The trooper concluded that he had discovered the components of a "one pot" methamphetamine production system, and that the bottle containing the off-white liquid was the reaction vessel of the system.[1]  During his search, the trooper did not observe any tubing or tin foil as is often associated with the "one pot" system, nor did he smell any pungent odors as is

---

[1]  The court heard testimony from the officer that in the "one pot" system of methamphetamine manufacture, two bottles are used to produce methamphetamine.  The first, known as the reaction vessel, is used to create liquid methamphetamine, or "sludge."  The second bottle, known as the gassing generator, is used for a second chemical reaction to produce hydrogen chloride gas—a substance highly toxic to humans.  Muriatic acid is commonly used as a component in the production of hydrogen chloride gas.  The "sludge" and the hydrogen chloride gas are then combined to create solid methamphetamine.

4

characteristic of the release of dangerous hydrogen chloride gas during production of methamphetamine using the "one pot" system.

[¶7]  After finding the items in the bunkroom, the trooper placed the Cartons under arrest and restrained them with handcuffs.  While the Cartons were handcuffed, and before the officer read them their *Miranda* rights, the trooper asked Kevin Carton where the gassing generator was located because he believed that the device could result in such hazards as fire or the release of toxic gas.  Kevin responded to the trooper's question, indicating that the gassing generator was broken and outside of the camp.

[¶8]  On November 27, 2013, a special agent of the MDEA-CDLET applied for a warrant to search the camp for evidence of illegal drug manufacture and trafficking.  The District Court (*O'Mara, J.*) issued a search warrant that day.

[¶9]  On March 6, 2014, the Cartons were each charged by indictment with one count of unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A).  On July 23, 2014, the Cartons filed a joint motion to suppress (1) evidence obtained from the officer's initial search of the camp on November 26th, (2) any and all statements made as a result of the officer's pre-*Miranda* questioning at the camp on November 26th, and (3) any and all

evidence obtained as a result of searches conducted pursuant to the November 27th search warrant because of an alleged misstatement in the affidavit supporting the issuance of the warrant.[2]

[¶10] Following a hearing on January 27, 2015, the trial court (*Stokes, J.*) denied the joint motion to suppress. In its order, the court concluded that the trooper's initial, warrantless search of the camp was valid because he had permission from the camp's owner. The court further concluded that because he had the owner's permission, the trooper was under no obligation to consult with the Cartons as to whether they objected to the search. The court concluded that Kevin Carton's statement regarding the location of the gassing generator was admissible under the public safety exception to the *Miranda* rule as recognized in *New York v. Quarles*, 467 U.S. 649, 653 (1984). It further concluded that the trooper's concern for the location of the gassing generator was appropriate and sufficient to qualify for the public safety exception to *Miranda*. It reasoned that *Quarles* did not require the public safety issue to be "acute" in order for the exception to apply, that the trooper had probable cause to believe that a "one pot" system

---

[2] The alleged misstatement in the affidavit was that the officer observed Micah Carton "cooking methamphetamine in the kitchen" of the hunting camp when he arrived, whereas the officer's incident report stated that the officer had observed Micah Carton "cooking supper in the kitchen."

6

utilizing a gassing generator was at the camp, and that the conspicuous absence of the gassing generator among the other components was enough to justify the pre-*Miranda* question.

[¶11] The court also denied the Cartons' joint motion to suppress the results of searches conducted pursuant to the November 27, 2013, search warrant. Although the affidavit included a statement that the State conceded was erroneous with regard to the trooper's observation of Micah Carton's activity in the kitchen, the court concluded that there was other sufficient information to support the issuance of the search warrant. The court ruled that under the totality of the circumstances contained in the affidavit, and allowing for all reasonable inferences that could have been drawn from it, there was a "fair probability" sufficient to sustain the magistrate's issuance of the search warrant.

[¶12] On May 6, 2015, the Cartons each entered a conditional guilty plea to the sole charge of unlawful trafficking of scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A), pursuant to M.R. Crim. P. 11.[3] On May 20, 2015, the court entered judgments of conviction, sentencing each brother to fifty-four months of commitment to the Department of Corrections with all

---

[3] The Maine Rules of Unified Criminal Procedure (effective July 1, 2015) were not in effect in Aroostook County when the pleas were entered.

but six months suspended, three years of probation, and a fine of two thousand dollars. The Cartons timely appealed. *See* M.R. App. P. 2(b)(2)(A).

## II. DISCUSSION

[¶13] In reviewing an order denying a motion to suppress, we review questions of law de novo. *Cote*, 2015 ME 78, ¶ 9, 118 A.3d 805. We "will uphold the court's denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision." *State v. Diana*, 2014 ME 45, ¶ 11, 89 A.3d 132.

A. Warrantless Search

[¶14] The Cartons argue that although the owner of the camp consented to the officer's search, they nevertheless had a reasonable expectation of privacy at the camp. They further contend that because they were guests of the camp owner, they had the right to object to the warrantless search and should have been granted the opportunity to do so before the officer began his search.

[¶15] Both the United States and Maine Constitutions guarantee citizens protection against unreasonable searches and seizures. U.S. Const. amend IV; Me. Const. art. I, § 5; *State v. Glover*, 2014 ME 49, ¶ 10, 89 A.3d 1077. This authority applies to defendants who have a legitimate expectation

of privacy in the location of the search. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

[¶16] The owner of a home has the right to consent to a warrantless search by law enforcement. *Fernandez v. California*, 134 S. Ct. 1126, 1132 (2014). However, the United States Supreme Court has generally recognized that an overnight guest in a home has a reasonable expectation of privacy in that home. *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990); *see also Stoner v. California*, 376 U.S. 483, 488-90 & n.7 (1964) (holding that hotel night clerk's consent to search an occupied guest room was not valid consent and the evidence obtained from the search was inadmissible).

[¶17] An officer may conduct a warrantless search of premises without the consent of a defendant, provided that the officer has obtained the consent of "a third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). However, if the defendant is lawfully present and objects, the search may not be conducted without a warrant. *Georgia v. Randolph*, 547 U.S. 103, 120 (2006).

[¶18] In *Randolph*, police responded to a domestic dispute between an estranged couple. *Id.* at 107. The wife informed police that her husband was

an active cocaine user and that they would be able to find evidence of cocaine use in his home. *Id.* Police asked the husband for consent to search his house and the husband refused. *Id.* Police then turned to the wife and asked for her consent, which she gave. *Id.* The police found evidence of cocaine during their search. *Id.*

[¶19] The Supreme Court ruled that the search of the home was unreasonable, as the husband was physically present and gave an express denial of consent, even though his wife later consented to the search. *Id.* at 120. The Court held that "[d]isputed permission is no match for [the] central value of the Fourth Amendment," i.e., that "the home is entitled to special protection as the center of the private lives of our people." *Id.* at 115 (quotation marks omitted). In the Court's estimation, the right that a nonconsenting co-occupant has to privacy outweighs any interest the consenting co-occupant has in allowing the premises to be searched. *Id.* As Justice Souter, writing for the Court, stated,

> We therefore hold that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.

*Id.* at 120.

[¶20]   *Randolph*, however, does not require law enforcement to affirmatively seek the consent of physically present co-tenants who may object.  *Id.* at 121-22 (holding that there is no need to affirmatively seek the consent of a potentially objecting co-tenant when consent has been given by another co-tenant, unless law enforcement has removed the potentially objecting co-tenant).  Here, a uniformed officer entered the camp.  The Cartons asked what the officer was doing there, and he informed them that he was there to "look around."  The officer had previously received the consent of the owner to search the camp.  Neither of the Cartons affirmatively denied the officer consent to conduct the search.  Given the lack of any objection by the Cartons, and because the officer had previously received the consent of the owner to search the camp, the court did not err in concluding that the warrantless search was valid.

B.    Pre-*Miranda* Statement

[¶21]  The Cartons argue that Kevin Carton was in custody when he indicated to the officer where the gassing generator was located, and that his statement is therefore inadmissible against them because it was made while Kevin was under arrest but before he was informed of his *Miranda* rights.  They further argue that the public safety exception to *Miranda* as announced

by the United States Supreme Court in *Quarles* does not apply in the instant case because the threat of exposure to the contents of the gassing generator was not an imminent threat to public safety.

[¶22] Generally, a defendant who is in custody must be advised of his or her *Miranda* rights prior to an interrogation by law enforcement in order for statements made during the interrogation to be admissible against him or her in the defendant's subsequent trial. *State v. Dion*, 2007 ME 87, ¶ 21, 928 A.2d 746. Statements made by a defendant in custody before being given a *Miranda* warning may still be admissible if they fall within one of several exceptions. *Quarles*, 467 U.S. at 655, 687 n.10. In *Quarles*, the United States Supreme Court articulated one of these exceptions as occurring when the interrogation is prompted by a concern for public safety. *Id.* at 655-56. In recognizing the public safety exception, the Court held that "concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in *Miranda*." *Id.* at 653.

[¶23] Federal courts have held that the public safety exception applies to law enforcement questioning related to the location of a gassing generator or other methamphetamine manufacturing equipment. *See, e.g., United States v. Noonan*, 745 F.3d 934, 938 (8th Cir. 2014) (holding that the public safety

exception applied when a deputy had probable cause to believe that a stopped driver was a methamphetamine manufacturer and the officer asked if a "one pot" was in the car to avoid being sprayed with toxic chemicals); *United States v. King*, 182 F. App'x 88, 91 (3d Cir. 2006) (holding that officers' pre-*Miranda* questions concerning active methamphetamine production were within the public safety exception); *see also State v. Bilynsky*, 2007 ME 107, ¶¶ 29-30, 932 A.2d 1169 (holding that questions about the location of a gassing generator and other equipment related to the production of methamphetamine fall within the "protective sweep" exception to *Miranda*).

[¶24]  Here, the officer had probable cause to believe that there existed a risk to public safety because the whereabouts of the source of a potential danger to the public was unknown.  Although the officer did not notice tin foil, tubing, or the pungent scent associated with an operative gassing generator, he did observe other components of a "one pot" system, as well as muriatic acid, which is used in the gassing generator to produce toxic hydrogen chloride gas.  The officer did not know that the generator was located outside of the camp.  Because the officer's questions were prompted by his concern for public safety, the court did not err in concluding that Kevin Carton's statements were admissible under the public safety exception to *Miranda*.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Matthew C. Garascia, Esq., Auburn, for appellants Kevin Carton and Micah Carton

Todd R. Collins, District Attorney, and Kurt A. Kafferlin, Asst. Dist. Atty., 8th Prosecutorial District, Houlton, for appellee State of Maine

**At oral argument:**

Matthew C. Garascia, Esq., for appellants Kevin Carton and Micah Carton

Kurt A. Kafferlin, Asst. Dist. Atty., for appellee State of Maine

Aroostook County (Houlton) Superior Court docket numbers CR-2013-183, 184
FOR CLERK REFERENCE ONLY