MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2019 ME 98
Docket:      Fra-17-12
Argued:      October 12, 2017
Reargued:    October 23, 2018
Decided:     June 18, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

KEVIN M. O'DONNELL

HUMPHREY, J.

[¶1] Kevin M. O'Donnell appeals from a judgment of conviction entered in the Unified Criminal Docket (Franklin County, *Mullen, J.*) following his conditional guilty pleas to burglary (Class B), 17-A M.R.S. § 401(1)(B)(4) (2018); stealing drugs (Class D), 17-A M.R.S. § 1109(1), (2)(B) (2018); and violation of a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2018), entered pursuant to M.R.U. Crim. P. 11(a)(2) following the denial of his motion to suppress (*Stokes, J.*).

[¶2] O'Donnell argues that the court erred when it denied his motion to suppress all evidence obtained as a result of the State's acquisition of his cell phone's location information. The court concluded that (1) the acquisition of O'Donnell's cellular phone location information did not constitute a search

under the Fourth Amendment to the United States Constitution and was not excluded from evidence by Maine's Electronic Device Location Information Act (EDLIA), 16 M.R.S. §§ 647 to 650-B (2018); (2) the entry into and search of O'Donnell's residence were lawful; and (3) the fruit-of-the-poisonous-tree doctrine was inapplicable.  We affirm the judgment.

## I.  BACKGROUND

[¶3]  In its order denying the motion to suppress, the court found the following facts, which are supported by the record and viewed in the light most favorable to the motion court's order.  *See State v. Gerry*, 2016 ME 163, ¶ 2, 150 A.3d 810.

[¶4]  On April 4, 2015, a sergeant from the Rangeley Police Department received a call reporting a burglary at the caller's apartment in Rangeley.  The caller said that two flat-screen televisions, a PlayStation 3, medical marijuana, some ammunition, and several firearms—including a loaded handgun—had been taken from his residence.

[¶5]  The caller explained that a friend had alerted him to the burglary and stated that O'Donnell and Danielle Nelson were the perpetrators.  The caller told the sergeant that he had ended a relationship with Nelson on April 3, 2015, and drove Nelson, her daughter, and their belongings to O'Donnell's residence

in Lisbon.  The caller and Nelson planned to meet at the Auburn Mall on April 4, 2015—the day of the burglary—so that the caller could return some paperwork to Nelson.  The caller went to the mall, but Nelson never arrived.

[¶6]  The sergeant contacted the friend who had informed the caller about the burglary.  The friend corroborated the caller's account and explained that he had heard about the burglary from an individual in Florida.  The sergeant then spoke with that individual, who stated that O'Donnell had been in Florida with the individual for the past three weeks and that O'Donnell said he planned to move to Florida with Nelson and finance the move by stealing guns and money from the caller.

[¶7]  The sergeant then contacted the Franklin County and Androscoggin County dispatch centers.  He learned that Nelson was currently on probation and O'Donnell was the subject of an outstanding arrest warrant for charges of eluding an officer and driving to endanger.

[¶8]  On April 5, 2015, the sergeant asked an officer from the Lisbon Police Department, who was familiar with O'Donnell and his residence from previous encounters, to check O'Donnell's home in Lisbon.  The Lisbon officer went to O'Donnell's residence and, although he did not make contact with

4

anyone, he observed that the interior lights were on and he saw a suitcase in the living room.

[¶9] On the same day, using phone numbers provided by the sergeant, the Androscoggin County dispatcher prepared and submitted an "emergency disclosure form" to Verizon Wireless to "ping" the cell phones of O'Donnell and Nelson to assist law enforcement in locating them.[1] The sergeant testified that he wanted to locate O'Donnell and Nelson quickly because he was concerned about officer safety, and because O'Donnell had a history of eluding law enforcement and had expressed an intention to leave the state.

[¶10] The sergeant received the information from Verizon for both numbers. The data revealed that at the moment the cell phones were pinged, they were located in an area of Lewiston near two motels and in close proximity to one another. The sergeant relayed the information to the Lewiston Police Department.

---

[1] The parties dispute whether the request to Verizon Wireless included a request for Nelson's cell phone location information as well as O'Donnell's. The sergeant testified that he provided the dispatcher with both phone numbers and that Verizon provided location information for both cell phones; however, only O'Donnell's number appears on the emergency situation disclosure form that was admitted in evidence at the hearing. The court found, however, that the officers received cell phone location information for both O'Donnell and Nelson, supporting an inferred finding that requests were made for location information for both of their cell phones.

[¶11]  By this time, the Lisbon officer had left O'Donnell's residence and was directed by a dispatcher to search the area in Lewiston identified by Verizon.  In Lewiston, the Lisbon officer learned that O'Donnell had checked into a particular motel.  After obtaining a key to O'Donnell's room from the manager of the motel, the Lisbon officer and backup officers forcibly entered the room, secured O'Donnell and Nelson, and placed them under arrest.

[¶12]  As officers escorted Nelson out of the room, O'Donnell ordered her not to "tell [the police] shit."  Nonetheless, Nelson spoke with the officers and accompanied them to the residence in Lisbon where she and O'Donnell had been staying.[2]  Nelson gave the officers permission to enter the residence and helped them locate a PlayStation and two flat screen televisions inside the residence.

[¶13]  In May 2015, a grand jury indicted O'Donnell on charges of theft by unauthorized taking (Count 1), 17-A M.R.S. § 353(1)(B)(2) (2018); burglary (Count 2), 17-A M.R.S. § 401(1)(B)(4); stealing drugs (Count 3), 17-A M.R.S. § 1109(1), (2)(B); and violation of a condition of release (Count 4), 15 M.R.S. § 1092(1)(A).

---

[2]  The Lisbon officer testified that he had known Nelson for several years and had prior contact with her at this residence.

6

[¶14] In July 2015, O'Donnell filed an amended motion to suppress the cell phone location information provided by Verizon and "any evidence" obtained as a result of that information. After an evidentiary hearing, the court (Franklin County, *Stokes, J.*) denied the motion.

[¶15] In December 2016, O'Donnell entered conditional guilty pleas on Counts 2, 3, and 4 pursuant to M.R.U. Crim. P. 11(a)(2).[3] O'Donnell was sentenced to four years' imprisonment with all but four months suspended and two years of probation for Count 2, thirty days for Count 3, and thirty days for Count 4, all to be served concurrently. O'Donnell timely appealed. M.R. App. P. 2B(b).

[¶16] After we heard oral arguments in this case in October 2017, the United States Supreme Court heard oral arguments in a case involving "cell-site location information (CSLI)"[4] and the issue of "whether the Government

---

[3] The State dismissed Count 1, theft by unauthorized taking, 17-A M.R.S. § 353(1)(B)(2) (2018).

[4] The Supreme Court described CSLI as follows:

Cell phones perform their . . . functions by connecting to a set of radio antennas called cell sites. . . .

Cell phones continuously scan their environment looking for the best signal, which generally comes from the closest cell site. . . . Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI). . . .

Wireless carriers collect and store CSLI for their own business purposes . . . .

conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." *Carpenter v. United States*, 585 U.S. ---, 138 S. Ct. 2206, 2211 (2018). We stayed O'Donnell's appeal pending the Supreme Court's decision. *Carpenter* was decided on June 22, 2018. *Id*. at 2206.[5] We called for additional briefing and reargument in light of the Supreme Court's decision, and invited amicus briefs. O'Donnell's case was reargued on October 23, 2018.

## II. DISCUSSION

[¶17] On appeal, O'Donnell challenges the court's denial of his motion to suppress, arguing that the acquisition of his CSLI was a search under the Fourth Amendment and a violation of Maine's Electronic Device Location Information Act, 16 M.R.S. §§ 647 to 650-B. "When an appellant challenges a court's order

---

*Carpenter v. United States,* 585 U.S. ---, 138 S. Ct. 2206, 2211–12 (2018) (quotation marks omitted).

[5] In *Carpenter*, law enforcement had investigated a string of armed robberies of stores across multiple states and acquired, without a warrant, the historical CSLI of one of the suspects in order to corroborate his proximity to the stores at the times the robberies occurred. *See id*. at 2212-13. This location information "clinched the case" because it put Carpenter near the stores at the times they were robbed. *Id*. at 2213.

*Carpenter* addressed whether, for Fourth Amendment purposes, the warrantless acquisition of "historical" CSLI was constitutional under the third-party-doctrine exception to the exclusionary rule because Carpenter voluntarily conveyed his phone's location to his cellular carrier, thereby waiving any expectation of privacy in the CSLI his phone generated. *Id*. at 2219-20. The Supreme Court declined to extend the third-party doctrine to historical CSLI because, unlike other forms of third-party disclosure, the automatic nature of its generation and the sheer volume of data that it can provide enable the government to compile an "exhaustive chronicle" of a phone user's location that is "in no meaningful sense" voluntarily disclosed. *Id*. at 2219-20.

8

on a motion to suppress, we review the factual findings of the motion court for clear error and the application of those facts to constitutional protections . . . de novo." *State v. Blier*, 2017 ME 103, ¶ 7, 162 A.3d 829 (alteration in original) (quotation marks omitted).

A.     The Fourth Amendment

[¶18]  O'Donnell contends that the acquisition of his CSLI was a search conducted without a warrant and not allowed by any recognized exception to the warrant requirement and was, therefore, a violation of his Fourth Amendment rights, and that *Carpenter* supports his assertion.  He argues that because the acquisition of his phone's location information was illegal, the motion court should have suppressed all of the evidence seized from the motel room where he was arrested and any evidence derived from that entry— including evidence seized in the subsequent search of his Lisbon residence—as inadmissible fruit of the poisonous tree.  *See State v. Thibodeau*, 2000 ME 52, ¶ 6, 747 A.2d 596.

[¶19]  As noted above, law enforcement agents had substantial reason to believe O'Donnell and Nelson were attempting to leave the state together and also sought and obtained the CSLI of *Nelson's phone* in an effort to locate O'Donnell.  Because Nelson has not challenged the State's search of her phone's

location information, which led to the same evidence that O'Donnell seeks to suppress, we begin our analysis with the foundational question of whether O'Donnell has standing to seek the exclusion of the evidence that was acquired by way of Nelson's CSLI. If O'Donnell does not have standing to challenge the acquisition of Nelson's CSLI, then the lawfulness of the acquisition of his CSLI matters little to the outcome of his efforts to suppress evidence derived from that information.

[¶20] Whether a defendant has standing to challenge a search is "significantly affected by the unique context" of his claim. *State v. Lovett*, 2015 ME 7, ¶ 8, 109 A.3d 1135 (quotation marks omitted). The defendant has the burden of showing that he has standing to challenge a search, *State v. Maloney*, 1998 ME 56, ¶ 6, 708 A.2d 277, meaning that he "must demonstrate that *his own* reasonable expectation of privacy was violated by the action of the State." *Lovett*, 2015 ME 7, ¶ 8, 109 A.3d 1135 (quotation marks omitted); *see also Rakas v. Illinois*, 439 U.S. 128, 148 (1978). Assuming without deciding that acquiring an individual's location by way of CSLI for any duration—whether by a single ping or over an extended period of time—constitutes a search,[6] it is

---

[6] In *Carpenter*, "[t]he parties suggest[ed] . . . that the acquisition of CSLI becomes a search only if it extends beyond a limited period" and the Government argued that "the seven days of CSLI [it] requested from Sprint [w]as the pertinent period." *Carpenter*, 138 S. Ct. at 2217 n.3. However, the

well-established that Fourth Amendment rights cannot be asserted vicariously. *Rakas*, 439 U.S. at 133-34*; State v. O'Rourke*, 2001 ME 163, ¶ 21 n.1, 792 A.2d 262. In other words, a defendant cannot assert a Fourth Amendment violation when the evidence is derived from a search of property in which he does not have a constitutionally sufficient expectation of privacy. *See Lovett*, 2015 ME 7, ¶ 8, 109 A.3d 1135.

[¶21] Courts have consistently held that defendants have standing to challenge a search of cell phones in which they have some ownership or possessory interest, but do not have standing to challenge the acquisition of information showing a phone's location when the defendant has no property interest or expectation of privacy in the particular device subject to the search. *Compare United States v. Woods*, 336 F. Supp. 3d 817, 826-27 (E.D. Mich. 2018) (holding that a defendant has standing to challenge the admissibility of his own CSLI records), *and Commonwealth v. Fredericq*, 97 N.E.3d 367, 375 (Mass. App. Ct. 2018) (concluding that the registered owner of a phone has standing regardless of its use by others), *with United States v. Oakes*, 320 F. Supp. 3d 956,

---

Court determined that it "need not decide whether there is a limited period for which the Government may obtain an individual's historical CSLI free from Fourth Amendment scrutiny, and if so, how long that period might be. It is sufficient for our purposes today to hold that accessing seven days of CSLI constitutes a Fourth Amendment search." *Id.*

961 (M.D. Tenn. 2018) ("*Carpenter* has not changed that, before [a] Defendant can assert a Fourth Amendment violation, he has to be able to assert a personal connection to the . . . object in which he claims a privacy right."); *see also State v. Sexton,* 2017 ME 65, ¶ 34, 159 A.3d 335 (holding that a defendant does not have standing when the phone at issue belongs to a nonparty); *Commonwealth v. Estabrook*, 38 N.E.3d 231, 237 n.9 (Mass. 2015) (noting that a defendant has no standing to challenge law enforcement's acquisition of the CSLI of a person who is not a party to the appeal when there is no evidence that the defendant used that person's phone).

[¶22]  In *State v. Sexton*, for example, law enforcement agents located a defendant by using his girlfriend's cell phone location information.[7]  2017 ME 65, ¶ 34, 159 A.3d 335.  We held that the defendant lacked standing to challenge the acquisition of this information because he had no expectation of privacy in her phone or her phone's records.  *Id.*; *see also Lovett*, 2015 ME 7, ¶ 8, 109 A.3d 1135.

---

[7]  We acknowledge that *Sexton* referred generally to "cell phone location information," not distinguishing between various methods of geolocation, such as CSLI, GPS, and other location data. *See State v. Sexton*, 2017 ME 65, ¶ 9, 159 A.3d 335.  The only location method at issue here is CSLI. The proceedings in *Sexton* occurred before Maine's EDLIA, 16 M.R.S. §§ 647 to 650-B (2018), was enacted in 2013.  *Id.* ¶ 6 n.3.

[¶23]  O'Donnell does have standing to challenge the State's acquisition of *his* phone's CSLI, *see Woods*, 336 F. Supp. 3d at 826-27; *Fredericq*, 97 N.E.3d at 375.  And we recognize that law enforcement agents did acquire information from Verizon that O'Donnell's *and* Nelson's phones were in close proximity to each other in the area of Lewiston where O'Donnell and Nelson were ultimately found.  Nonetheless, O'Donnell lacks standing to challenge the legality of law enforcement's acquisition of *Nelson's* CSLI, or any evidence obtained as a result of that acquisition, on Fourth Amendment grounds.  *Sexton*, 2017 ME 65, ¶ 34, 159 A.3d 335.  Because O'Donnell lacks standing to challenge evidence obtained as a result of the acquisition of Nelson's CSLI, which is the same evidence he seeks to exclude based on the acquisition of his own CSLI, we need not decide whether the acquisition of O'Donnell's CSLI was a search under the Fourth Amendment.

B.     Maine's Electronic Device Location Information Act

[¶24]  O'Donnell next argues that the court erred when it declined to grant his motion to suppress because the State violated EDLIA, 16 M.R.S. §§ 647 to 650-B, which, he asserts, provides protections that the federal Constitution does not, including a heightened expectation of privacy in CSLI and a limitation on the disclosure or admission in evidence of location information acquired

from an electronic device without a warrant. Again, however, O'Donnell's location was discovered as a result of law enforcement's acquisition of information from both O'Donnell's phone and from Nelson's phone.

[¶25] Although O'Donnell argues on appeal that the motion court should have suppressed evidence of his CSLI because it was obtained by law enforcement in violation of "the warrant provisions of § 650-A," he does not argue that the acquisition and disclosure of *Nelson's* CSLI, and evidence derived from that information, was also a violation of section 650-A(1). Even if he did, he lacks standing to challenge that acquisition and disclosure. In the absence of statutory language conferring standing, a defendant's standing to challenge actions taken by the state pursuant to a criminal statute is "no broader than the Fourth Amendment rule of standing." *United States v. Matsura*, 129 F. Supp. 3d 975, 979 (S.D. Cal. 2015); *see also United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991); *United States v. Martin*, 169 F. Supp. 2d 558, 564 (E.D. La. 2001); *United States v. Garcia*, No. 90 Cr. 724 (DNE), 1991 U.S. Dist. LEXIS 8464, at *3 (S.D.N.Y. June 21, 1991); *Commonwealth v. Williams*, 900 N.E.2d 871, 876 n.8 (Mass. 2009).

[¶26] EDLIA does not confer upon a defendant standing to challenge the admissibility of evidence obtained by law enforcement from the warrantless

acquisition of location information of a nondefendant third party's electronic device. *Compare* 16 M.R.S. §§ 647 to 650-B *with* 18 U.S.C. §§ 2510(11), 2518(10)(a) (LEXIS through Pub. L. 116-19) (defining under federal law persons who have standing to challenge unlawful acquisition of electronic evidence). To the extent that EDLIA confers standing at all, it merely reiterates the constitutional standing of the "owner" and "user" of the device as persons who have a property interest or expectation of privacy in the device as the owner or user of it. *See* 16 M.R.S. § 647(7), (9).

[¶27] As we previously noted, Fourth Amendment rights cannot be asserted vicariously, *Rakas*, 439 U.S. at 133-34*; O'Rourke*, 2001 ME 163, ¶ 21 n.1, 792 A.2d 262, and a defendant "must demonstrate that *his own* reasonable expectation of privacy was violated by the action of the State." *Lovett*, 2015 ME 7, ¶ 8, 109 A.3d 1135 (quotation marks omitted). Here, O'Donnell has presented no evidence that he owned or used Nelson's phone, or that the acquisition and disclosure of Nelson's CSLI violated *his* expectation of privacy. He therefore lacks standing to challenge the acquisition and use of Nelson's CSLI and evidence derived from that acquisition under EDLIA. *See Commonwealth v. Lugo*, 120 N.E.3d 1212, 1224-26 (Mass. 2019); *Estabrook*, 38 N.E.3d at 237 n.9. Because O'Donnell lacks standing under EDLIA to

challenge the evidence obtained as a result of the acquisition of Nelson's CSLI—which is precisely the same evidence he seeks to suppress based on the acquisition of his own CSLI—whether the State violated his rights under EDLIA when it obtained his location information without a warrant is irrelevant to whether the court erred in denying his motion to suppress.

C.     Consent to Enter and Search O'Donnell's Residence

[¶28]    Finally, O'Donnell argues that the trial court erred when it determined that the police had an objectively reasonable belief that Nelson, as an occupant of O'Donnell's residence in Lisbon, had authority to consent to the entry and search of the premises.

[¶29]  "A court's factual findings addressing the existence of consent are reviewed for clear error.  The ultimate question of whether the facts, as found, establish that an individual consented to the ensuing search and seizure is a distinctly legal question that we will review de novo." *State v. Nadeau*, 2010 ME 71, ¶ 18, 1 A.3d 445 (citation omitted).  Because the court's findings are supported by the record and reflect no errors, we review de novo whether it was objectively reasonable for the police to believe that Nelson had the authority to consent to the search. *Id*. ¶ 18 n.4.

[¶30]  It is well-settled that law enforcement may enter and search a residence upon the voluntary consent of the owner or a person who jointly occupies and has common authority over the premises.  *See United States v. Matlock*, 415 U.S. 164, 171 (1974); *State v. Carton*, 2016 ME 119, ¶ 17, 145 A.3d 555.  The United States Supreme Court has considered whether "a warrantless entry is valid when based upon the consent of a third party whom the police, *at the time of the entry*, reasonably believe to possess common authority over the premises, but who in fact does not do so."  *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990) (emphasis added).  The Supreme Court's decision in *Rodriguez* instructs that a "determination of consent to enter must be judged against an objective standard: would the facts available to the officer *at the moment . . .* warrant [an officer] of reasonable caution in the belief that the consenting party had authority over the premises?"  *Id.* at 188 (emphasis added) (quotation marks omitted).

[¶31]  Under the circumstances presented here, we conclude that, at the time of entry, the police officers' belief that Nelson had common authority over the premises was objectively reasonable.  The sergeant had learned from the caller and the individual in Florida that Nelson had returned with her belongings and her daughter to O'Donnell's residence in Lisbon on April 3,

2015.  The Lisbon officer testified that he had encountered Nelson many times before and knew that "[s]ince I've been dealing with Danielle Nelson, since 2011, she's resided at [O'Donnell's residence] in Lisbon."  He also testified that Nelson had previously returned to O'Donnell's Lisbon residence after she alleged that O'Donnell assaulted her and, as a result, O'Donnell was not permitted to return to the residence because Nelson was living there.  The Lisbon officer testified further that, when he transported Nelson to the Lisbon residence, she "let [the officers] into her home" and retrieved the contraband from a hidden place behind a wall and from an attic space in the garage.  Based on the information available to the officers who accompanied Nelson to the Lisbon residence, at the time of entry, their collective belief that Nelson had common authority over the premises was objectively reasonable.[8]

The entry is:

Judgment affirmed.

---

[8]  We are not persuaded by O'Donnell's additional argument that his statement to Nelson on April 5, 2015, as the police escorted her out of the hotel room that she should not "tell [the police] shit" revoked any authority Nelson had over his residence.  O'Donnell's order to Nelson not to speak with the police did not amount to a specific revocation of her apparent common authority over the shared premises.

Adam P. Sherman, Esq. (orally), Sherman & Worden, P.A., Auburn, for appellant Kevin O'Donnell

Andrew S. Robinson, District Attorney (orally), and Claire Gallagan Andrews, Asst. Dist. Atty., Office of the District Attorney, Farmington, for appellee State of Maine

Janet T. Mills, Attorney General, and Paul Rucha, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for amicus curiae Attorney General

Lawrence C. Winger, Esq., amicus curiae pro se

Zachary L. Heiden, Esq., American Civil Liberties Union of Maine Foundation, Portland, for amici curiae American Civil Liberties Union of Maine, American Civil Liberties Union, Electronic Frontier Foundation, and Maine Association of Criminal Defense Lawyers

Tina Heather Nadeau, Esq., Maine Association of Criminal Defense Lawyers, Portland, for amicus curiae Maine Association of Criminal Defense Lawyers

Franklin County Unified Criminal Docket docket number CR-2015-407
FOR CLERK REFERENCE ONLY