MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:      2025 ME 1
Docket:        Pen-24-36
Argued:        October 10, 2024
Decided:       January 2, 2025

Panel:         STANFILL, C.J.,[1] and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## RICHARD W. KELLEY

CONNORS, J.

[¶1]  The primary issue presented in this appeal is under what circumstances a passenger in a motor vehicle has standing under the Fourth Amendment to challenge a search of the vehicle.

[¶2]  Richard W. Kelley appeals from a judgment of conviction of aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(M) (2024), entered in the trial court (Penobscot County, *A. Murray, J.*) on Kelley's conditional guilty plea.[2]  Kelley's indictment followed the stop and search of a

---

[1] Although not available at oral argument, Chief Justice Stanfill participated in the development of this opinion.  *See* M.R. App. P. 12(a)(2) ("A qualified Justice may participate in a decision even though not present at oral argument.").

[2] The court also entered an order of criminal forfeiture, 15 M.R.S. § 5826 (2021), not at issue here. Because 15 M.R.S. § 5826 has since been amended, P.L. 2023, ch. 196, § 1 (effective October 25, 2023) (codified at 15 M.R.S. § 5826(6) (2024)), we cite the statute in effect when the crime was committed.

friend's vehicle in which Kelley was riding as a passenger. Law enforcement conducted the search on February 22, 2021, as part of an investigation of the vehicle's owner for drug trafficking. As part of this investigation, law enforcement had obtained a search warrant and two tracking warrants authorizing the installation and use of an electronic tracking device to monitor the vehicle's location.

[¶3] Kelley moved to suppress evidence obtained through the warrants. He contends that the court (*Mallonee, J.*) erred when it denied his motion on standing grounds. Kelley first argues that the trial court should not have reached the question of his standing because, at the suppression hearing, the State stipulated that he had a reasonable expectation of privacy in the vehicle. He then argues that he had a reasonable expectation of privacy in the vehicle because he had taken several trips as a passenger in the vehicle, including four trips between Maine and Massachusetts lasting eight to ten hours each, and because he had stored a "sea bag" and fishing boots in the vehicle for about one month.

[¶4] We conclude that the court did not err in reaching the question of standing despite the stipulation because "standing is a threshold issue[,]" and Maine courts have the authority and the duty to ensure that parties "meet this

basic requirement." *See State v. Lovett*, 2015 ME 7, ¶ 7, 109 A.3d 1135 (alteration and quotation marks omitted). We also conclude that the court properly denied Kelley's motion to suppress because he lacked a reasonable expectation of privacy in the vehicle and therefore did not have standing to challenge the warrants. *See id.* ¶ 8; *United States v. Symonevich*, 688 F.3d 12, 19-21 (1st Cir. 2012); *Rakas v. Illinois*, 439 U.S. 128, 148 (1978). Because we conclude that Kelley lacked standing to challenge the warrants, we do not reach his arguments about their validity. We affirm the judgment.

## I. BACKGROUND

[¶5] We view the evidence "in the light most favorable to the court's order on the motion to suppress." *State v. Akers*, 2021 ME 43, ¶ 2, 259 A.3d 127. The following facts are supported by competent record evidence. *See id.*

[¶6] In 2020, a Maine Drug Enforcement Agency (MDEA) Special Agent was investigating Keith Wedge for suspected drug-related activity. As part of his investigation, the Special Agent obtained two warrants authorizing the tracking of Wedge's vehicle using an electronic tracking device. In early 2021, the Special Agent obtained a warrant to search Wedge's vehicle. When MDEA agents executed the warrant and conducted the search, Wedge was driving the

4

vehicle and Kelley was a passenger. The search revealed drugs in the vehicle, and both Wedge and Kelley were arrested.

[¶7] Kelley was charged by complaint on March 11, 2021, and indicted on May 26, 2021. The indictment charged Kelley with one count of aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(M), and sought criminal forfeiture of cash discovered during the search, 15 M.R.S. § 5826 (2021). On March 30, 2022, Kelley filed a motion to suppress the evidence obtained through the two tracking warrants and the search warrant. Kelley made various arguments both in his motion and orally at the suppression hearing as to why he believed that the warrants were deficient.

[¶8] The court held a hearing on the motion on December 20, 2022. Kelley and the Special Agent both testified. At the outset of the hearing, the State declined to stipulate to Kelley's standing. Hence, the evidence in the hearing explored the standing issue.

[¶9] Kelley testified that the vehicle was owned by Keith Wedge, that he had known Wedge "[Kelley's] whole life," and that Kelley had ridden as a passenger in the vehicle "a fair amount," including on several trips around Mount Desert Island, on "[a]t least five" trips from Bass Harbor to Bangor, and on four trips to Massachusetts. Kelley also testified that he had left some

"personal belongings" in a "sea bag" in the vehicle for about a month, explaining that a sea bag is "a fishing bag that you take for spare clothes and takes care of all your personal belongings, makes it easy to travel with it and bring it from boat to boat."[3]  Kelley did not assert an ownership interest in the vehicle, and he testified that he had never driven the vehicle.

[¶10]  Following Kelley's testimony, the State "concede[d] for the purposes of the motion to suppress that [Kelley] ha[d] a reasonable expectation of privacy" in the vehicle.  The parties did not confirm and the court did not indicate that the court had accepted the stipulation.[4]  The court then heard oral argument from the parties about the validity of the warrants.

[¶11]  In an order entered on January 18, 2023, the court denied Kelley's motion to suppress, concluding that Kelley lacked standing to challenge the warrants.  The court concluded that because Kelley lacked standing, it "need not address Kelley's arguments concerning probable cause and the validity of using data generated out of state."

---

[3]  At oral argument before us, Kelley stated that during the vehicle search, no evidence was discovered inside his sea bag.

[4]  Good practice when a stipulation is offered is for the court to indicate on the record whether the court has accepted the stipulation.  *Cf. Bonville v. Bonville*, 2006 ME 3, ¶ 23, 890 A.2d 263 ("The court is not required to accept the agreement of the parties, but before it rejects it, the court must give the parties notice of its intention and an opportunity to present additional evidence on the issue or issues." (quotation marks omitted)).

[¶12]  Kelley filed a timely motion to reconsider, arguing that the court should decide the motion on its merits "because the State conceded standing at the hearing, and the evidence presented established standing to challenge the location searches."  He argued that "[b]ecause the State did not challenge standing, [he] did not argue it further in closing arguments before the Court."  Kelley also argued that he had an expectation of privacy "in the tracking of his movements while a passenger in the [vehicle]" as well as a possessory interest in the vehicle because he stored his sea bag in the vehicle.  Kelley, however, did not request that the motion record be reopened for the presentation of additional evidence.

[¶13]  The court denied the motion, acknowledging the State's stipulation but concluding that Kelley had "fully argued the issue of standing."  The court explained that "although the State eventually conceded the issue, that concession was not offered until after Kelley had argued the issue thoroughly in his brief and had addressed it further at the hearing."  The court added that Kelley "cite[d] no evidence and advance[d] no legal argument not addressed in his initial written and oral arguments that might support his contention" that he had standing.

[¶14]  The court held a Rule 11 hearing on January 5, 2024, where Kelley entered a conditional guilty plea to one count of aggravated trafficking in scheduled drugs.  *See* M.R.U. Crim. P. 11(a)(2).  The court accepted Kelley's plea and entered a judgment of conviction and an order of criminal forfeiture, sentencing Kelley to ten years in prison, with all but five years and one day of the sentence suspended and four years of probation.  Kelley timely appealed. *See* 15 M.R.S. § 2115 (2024), M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

[¶15]  We begin by considering the effect of the State's stipulation as to standing.  We then address whether Kelley had a reasonable expectation of privacy in the vehicle and therefore had standing to challenge the warrants.

**A.   The State's stipulation is not dispositive because the stipulation is not binding upon the court, and Kelley had a full and fair opportunity to present his evidence and argument as to his standing to challenge the search at the suppression hearing.**

[¶16]  Kelley argues that "[t]he lower court should not have denied the motion on a lack of standing because standing was not a disputed issue."  Kelley asserts that because the State stipulated to his reasonable expectation of privacy in the vehicle at the suppression hearing, the court should not have reached the issue of standing.

[¶17] "We review [a] court's findings on [a] motion to suppress for clear error and the ultimate decision to suppress de novo." *Lovett*, 2015 ME 7, ¶ 6, 109 A.3d 1135.

[¶18] A stipulation between the parties does not preclude a Maine court from addressing a standing issue. *See, e.g.*, *id.* ¶¶ 7-9. In *Lovett*, Lovett appealed from a judgment of conviction for drug trafficking following the denial of his motion to suppress. *Id.* ¶¶ 1-2. Lovett argued that law enforcement had lacked probable cause to search a vehicle in which he had been riding as a passenger at the time of the search. *Id.* ¶¶ 1-3. At the suppression hearing, the State argued that Lovett lacked standing to challenge the search, but the motion court did not address standing, instead concluding that the MDEA had had sufficient probable cause to search the vehicle. *Id.* ¶¶ 5, 7. The State did not appeal the court's ruling, and neither party briefed the issue of standing on appeal. *Id.* ¶ 7. We nonetheless addressed Lovett's standing "because '[s]tanding is a threshold issue and Maine courts are only open to those who meet this basic requirement.'" *Id.* ¶ 7 (quoting *Lindemann v. Comm'n on Governmental Ethics & Election Practices*, 2008 ME 187, ¶ 8, 961 A.2d 538). As we explained in *Lovett*, "[l]itigants and judges at suppression hearings must address the issue of standing because the inquiry as to whether a defendant's Fourth Amendment

rights have been substantively violated requires a determination as to whether that defendant's reasonable expectation of privacy was violated." *Id.* ¶ 9; *cf. State v. Cyr*, 501 A.2d 1303, 1305 (Me. 1985) (a certificate agreed to by the court and the State pursuant to M.R. Crim. P. 11(a)(2) is not binding upon this Court); *State v. Drown*, 447 A.2d 466, 471 (Me. 1982) (establishing that this Court "will decide for itself" whether a State's appeal, even when pursued with the approval of the Attorney General pursuant to 15 M.R.S. § 2115-A(5) (2024), meets the statutory standard established by 15 M.R.S § 2115-A(1) (2024)); *State v. Placzek*, 380 A.2d 1010, 1012 (Me. 1977) (a lower court's report agreed to by the State is not binding on this Court).

[¶19]  A significant body of federal case law holds that stipulations as to law are generally not binding on courts,[5] although courts will make exceptions where a stipulation by one party prejudiced the other by inducing him to rely on that stipulation to his detriment.

[¶20]  For example, in *United States v. Blanco*, 844 F.2d 344, 349 n.4 (6th Cir. 1988), a federal drug case, the Sixth Circuit rejected a defendant's

---

[5]  *E.g.*, *United States v. Tortorello*, 533 F.2d 809, 812 (2nd Cir. 1976) ("[W]hether [the defendant] has standing to challenge the legality of the searches is a question of law.  A concession by the Government on a question of law is not binding on the court."); *United States v. Lisk*, 522 F.2d 228, 231 n.8 (7th Cir. 1975) (noting that even if a statement by the government could be read as a stipulation to standing, "[w]e are not bound to accept, as controlling, stipulations as to questions of law" (quotation marks omitted)).

claim that the district court had erred "in allowing the government to withdraw from a 'stipulation' that he had standing," insisting that "[t]here is no evidence that [the defendant] and the government had ever so stipulated" and concluding that "[a]lthough the government did state during the hearing before the magistrate that it was satisfied that [the defendant] had standing, we see no prejudice to [the defendant] from the government's reversal of its position. The change of position was damaging in that it led to [the defendant's] conviction, but it was not prejudicial in the sense that he had relied on the government's original position to his detriment." *Id.* The Sixth Circuit added that "[i]t is doubtful, indeed, whether the government has any power to 'stipulate' as to standing; questions of law are not generally subject to stipulation." *Id.*

[¶21] Two cases in which federal appellate courts have found that a stipulation bound the government also indicate that whether a stipulation has a binding effect hinges on whether enforcing the stipulation would prejudice the defendant. In *United States v. Lott*, which involved a motion to suppress handguns and other evidence gathered during a traffic stop, the First Circuit held that the government was bound by its stipulation at the suppression hearing that "for purposes of this hearing . . . both Defendants . . . had [] standing to challenge whether or not they were, in fact, in possession of those

firearms." 870 F.2d 778, 781 n.5 (1st Cir. 1989). The court reasoned that "when the government has stipulated to standing, *thereby obviating the need for a defendant to present facts relevant to standing*, it may not thereafter claim the defendant lacked standing." *Id.* at 781 (emphasis added).

[¶22] Similarly, in *United States v. Hernandez*, 668 F.2d 824, 826 (5th Cir. 1982), the Fifth Circuit held that the government could not assert on appeal that the defendants lacked standing under the Fourth Amendment to challenge the search of a boat partly because at the suppression hearings the government had stipulated to their standing. *Id.* The Fifth Circuit reasoned that because of the government's stipulation, the defendants "never presented evidence as to their expectation of privacy in the boat's cabin," adding that based on the facts, "[i]t seems likely that appellants may have been able to demonstrate such a legitimate expectation." *Id.*

[¶23] Here, the court properly identified standing as a threshold issue, explaining, "Even when the parties do not argue the question of standing in a motion to suppress, the court must address this issue before determining whether the motion to suppress has any merit." *See Lovett*, 2015 ME 7, ¶¶ 7-9, 109 A.3d 1135. In its denial of Kelley's motion to reconsider, the court noted that Kelley had "fully argued the issue of standing" and that the court "fully

considered standing." Kelley presented argument on his standing in his motion to suppress, in his motion to reconsider, and at his suppression hearing, where he testified and his attorney presented argument. Further, although Kelley initially argued at oral argument before us that without the State's stipulation, "[p]erhaps . . . we would have wanted to develop [Kelley's privacy interest] further in evidence," Kelley eventually stated that "the record is developed enough on this issue . . . that standing has been established" and confirmed that he had presented evidence at the motion hearing prior to the State's stipulation and had not identified any additional evidence he would have offered if not for the stipulation. In other words, Kelley was not prejudiced by the court's decision not to accept the State's stipulation and fully presented his evidence and argument on the issue of his standing.

[¶24] We therefore conclude that the motion court did not err in reaching the issue of standing despite the State's stipulation.[6]

---

[6] As discussed *infra* note 7, Kelley has pursued only a federal constitutional claim to challenge the search. We view the impact of a stipulation in pursuing a federal claim as raising as a question governed by Maine law. As noted above, however, it is immaterial whether this impact is governed by Maine or federal law, because the test is the same: stipulations are not binding absent prejudice to the defendant.

**B.** **Kelley lacked a reasonable expectation of privacy sufficient to give him standing to challenge the search of the vehicle.**

[¶25]  Kelley argues that he had a reasonable expectation of privacy in the vehicle because he was "a regular passenger" who "spent hours riding in the passenger seat" on trips "all around [Mount Desert Island]," to Bangor, and to Massachusetts and because he stored his fishing boots and sea bag in the vehicle for about a month.[7]

[¶26]  "If [a] motion to suppress asserts a violation of the Fourth Amendment, the defendant must demonstrate that *his own* reasonable expectation of privacy was violated by the action of the State."[8] *Lovett*, 2015 ME 7, ¶ 8, 109 A.3d 1135 (emphasis in *Lovett* and quotation marks omitted).

---

[7]  Although Kelley quotes a decision of ours stating that "[b]oth the United States and Maine Constitutions guarantee citizens protection against unreasonable searches and seizures," *State v. Carton*, 2016 ME 119, ¶ 15, 145 A.3d 555, Kelley conducts no independent analysis of the Maine Constitution, and he does not argue that the requirements for establishing a reasonable expectation of privacy under the Maine Constitution differ from those under the United States Constitution. Therefore, although "the Maine Constitution may offer additional protections" beyond those provided by the Fourth Amendment, we decline to analyze Kelley's claims under the Maine Constitution and instead analyze them under the United States Constitution. *State v. Glover*, 2014 ME 49, ¶ 10 n.2, 89 A.3d 1077; *see State v. Moore*, 2023 ME 18, ¶¶ 19-20, 290 A.3d 533 (declining to analyze a Maine constitutional claim where the defendant failed to adequately raise the issue before the trial court or on appeal).

[8]  *See also Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." (quotation marks omitted)); *United States v. Payner*, 447 U.S. 727, 729, 735-37 (1980) (holding that a defendant lacked standing under the Fourth Amendment to suppress documents unlawfully seized from a third party despite the "flagrant[] illegal[ity]" of the underlying search); *Alderman v. United States*, 394 U.S. 165, 171-72 (1969) ("The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.").

To show a reasonable expectation of privacy in a third party's vehicle, a passenger must show a property or possessory interest in the vehicle or "an interest in the property seized." *Rakas*, 439 U.S. at 148; *see Lovett*, 2015 ME 7, ¶ 8, 109 A.3d 1135. On appeal, we review the trial court's factual findings for clear error but review the court's conclusions of law and ultimate determination de novo. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *State v. Barclift*, 2022 ME 50, ¶ 9, 282 A.3d 607.

[¶27] In *Symonevich*, the First Circuit decided a case with facts similar to those here. 688 F.3d at 16-17. There, the First Circuit established that a passenger on "a nearly six hour round-trip drive" between Maine and Massachusetts who had placed a personal item under the passenger seat lacked an expectation of privacy in the vehicle. *Id.* at 20-21. After he was indicted, Symonevich moved to suppress evidence recovered during the search of the car in which he had been riding as a passenger on a trip between Maine and Massachusetts. *Id.* at 16-20. The traffic stop was unrelated to a separate ongoing Drug Enforcement Agency investigation that had identified Symonevich as a caller to a recorded phone line. *Id.* at 16. Citing *Rakas*, the First Circuit concluded that Symonevich lacked standing to challenge the search. *Id.* at 19-21.

[¶28]   Although the First Circuit acknowledged that it had stated previously "that the fact of a long trip 'would engender a slightly greater privacy expectation than would a short trip,'" it rejected Symonevich's claim that a passenger on a long ride is comparable to an overnight house guest, explaining, "We are skeptical about the continued relevance of the type of duration argument that Symonevich makes" given the Supreme Court's subsequent case law "circumscribing the amount of privacy one can expect in a vehicle and further differentiating searches of automobiles from searches of homes." *Id.* at 20 (quoting *United States v. Lochan*, 674 F.2d 960, 965 (1st Cir. 1982)).  The First Circuit stopped short of "categorically rejecting the relevance of the duration of a trip in an automobile to the reasonable expectation of privacy analysis," but it also concluded that the duration of Symonevich's six-hour trip between Maine and Massachusetts "did nothing to enhance [his] expectation of privacy." *Id.* at 21.  The First Circuit also concluded that whether Symonevich had a possessory interest in an item placed under the passenger seat at the time of the stop and search by law enforcement was irrelevant to whether he had an expectation of privacy in the space below the seat.  *Id.*; *see also United States v. Almeida*, 748 F.3d 41, 47 (1st Cir. 2014) (noting the factors considered when evaluating whether a person has a reasonable expectation of privacy in a

vehicle; that a defendant must show a property or possessory interest in the vehicle; and that a person who is merely a passenger lacks a reasonable expectation of privacy in a vehicle).

[¶29]  We conclude that the court did not err in determining that Kelley lacked standing to challenge the warrants here.  In *Symonevich*, the First Circuit concluded that taking a long trip as a passenger in a vehicle and storing a personal item in the vehicle had little to no impact on an individual's expectation of privacy in that vehicle.  *Symonevich*, 688 F.3d at 20-21.  Although Kelley spent more time in the vehicle here than Symonevich spent in the vehicle in his case, and unlike the vehicle in *Symonevich*, the vehicle here was the subject of electronic tracking, the First Circuit's holding in *Symonevich* suggests that spending long periods in a vehicle and storing personal items in a vehicle do not create a reasonable expectation of privacy in that vehicle.  *See id.* at 20-21.

### III.  CONCLUSION

[¶30]   For the reasons given above, we conclude that the State's stipulation regarding whether Kelley had standing to challenge the search of Wedge's vehicle was not binding on the court and that Kelley lacked a reasonable expectation of privacy sufficient to bestow standing upon him.

The entry is:

Judgment affirmed.

---

Hunter J. Tzovarras, Esq. (orally), Bangor, for appellant Richard W. Kelley

Aaron M. Frey, Attorney General, Jason Horn, Asst. Atty. Gen., and Katie Ann Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2021-670
FOR CLERK REFERENCE ONLY